**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Christopher Eric McNEIL,**
**Defendant–Appellant.**

No. 02–30039.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 2004.

Filed March 24, 2004.

J. Mayo Ashley, Helena, MT, for the defendant-appellant.

William W. Mercer, United States Attorney, Billings, MT, for the plaintiff-appellee.

---

Before: HUG, GRABER, and CLIFTON, Circuit Judges.

HUG, Circuit Judge:

Christopher McNeil was convicted under 18 U.S.C. § 1001 for making false statements on his Criminal Justice Act 23 ("CJA–23") Financial Affidavit. On appeal McNeil argues that his actions should not be subject to punishment under § 1001 because § 1001(b) specifically excludes "judicial proceeding[s]" from the ambit of the statute. He also argues that the district court erred by denying a "good faith" jury instruction at trial. We have jurisdiction to hear this appeal from the district court. 28 U.S.C. § 1291. Because we hold that McNeil's statements were made during the course of a "judicial proceeding" within the meaning of § 1001(b), we reverse.

## I. Background

On April 6, 2000, Christopher McNeil was indicted on one count of possessing false documents. He requested that the court appoint counsel to represent him and submitted a CJA–23 Financial Affidavit to support his request. The form requires the defendant to list his assets to determine if he qualifies financially for a court-appointed attorney. McNeil completed the form with the aid of Federal Defender Anthony Gallagher. McNeil admits that he omitted reference to real estate and several financial accounts that he owned at the time. Most of the accounts were in fictitious names, and McNeil argues that he did not list them on Gallagher's advice because of the possibility that such a disclosure would incriminate him. His T. Rowe Price account with a positive balance, however, was in his own name.

McNeil admits that he did not tell Gallagher about this account.

Gallagher does not remember McNeil's case, but he testified that it was his custom to advise clients not to list assets that could be incriminating. Instead, Gallagher would make a notation on the form and tell the judge when the form was submitted that it was incomplete because of self-incrimination concerns. McNeil's form has no such notations, and Gallagher did not make a declaration to Magistrate Judge Cebull to that effect when the form was submitted.

On June 25, 2001, and on August 17, 2001, two federal grand juries indicted McNeil for making false statements on his CJA–23 Financial Affidavit in violation of 18 U.S.C. § 1001. McNeil pleaded not guilty to both counts. At the subsequent trial, the district judge refused to give a "good faith" instruction to the jury because he found that McNeil's failure to disclose the T. Rowe Price account to his attorney made him ineligible for that instruction. The jury convicted McNeil on both counts. On January 23, 2002, he was sentenced to a term of 18 months followed by 3 years of supervised release.

McNeil now appeals, arguing that his statements were made in a judicial proceeding and are therefore not subject to prosecution under § 1001. He also argues that the district court erred by refusing to give the "good faith" jury instruction.

## II. Discussion

Questions of statutory interpretation are reviewed *de novo*. *United States v. Bert*, 292 F.3d 649, 651 (9th Cir.2002). This case presents a question of statutory interpretation of first impression in this circuit. Congress amended 18 U.S.C. § 1001 in 1996 to clarify the reach of the statute. This is the first opportunity we have had

to address the newly constructed statute. As amended, the first section of the statute imposes criminal liability for, *inter alia,* knowingly and willfully making false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government."[1]   18 U.S.C. § 1001(a) (2000).   Subsection (b) creates an exception for judicial proceedings:

> Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings, or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

18 U.S.C. § 1001(b). Thus, to qualify for this exception from liability, McNeil must show that (1) he was a party to a judicial proceeding, (2) his statements were submitted to a judge or magistrate, and (3) his statements were made "in that proceeding." *Id.*

McNeil was a party to a judicial proceeding when he made the statements because a judicial proceeding had been initiated against him. He had already been indicted on one count of possessing false identification documents when he made his false statements to Magistrate Judge Cebull. *See Fellers v. United States,* —— U.S. ——, 124 S.Ct. 1019, 1022, 157 L.Ed.2d 1016 (2004) ("The Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.") (citations and internal quotation marks omitted).

Because McNeil's CJA–23 Financial Affidavit was presented to Magistrate Judge Cebull for use in determining whether McNeil qualified for court-appointed counsel, McNeil's statements satisfy the second requirement of submission to a judge or magistrate.

The final requirement to qualify for exemption from liability is that the statement must be made "in[a judicial] proceeding." 18 U.S.C. § 1001(b). This brings us to the pivotal issue in this case. We must determine whether the range of judicial activities implied by that phrase includes the inquiry into a defendant's financial status for purposes of appointing counsel. To do so, we start with the language of the statute itself. *Wilderness Society v. United States Fish & Wildlife Serv.,* 353 F.3d 1051, 1060 (9th Cir.2003) (en banc). Because words are to be given their "ordinary, contemporary, common meaning" unless they have been otherwise defined, we turn first to the dictionary. *Id.* (citations and quotation marks omitted). The Oxford English Dictionary defines "proceeding" as "[t]he fact or manner of taking legal action; a legal action; an act done by authority of the court, assembly or society." (5th ed.2002). Thus the term "proceeding" refers generally to legal actions and does not distinguish among different phases of an action.

Moreover, the Supreme Court has established the indictment as a definitional starting point for judicial "proceedings" in Sixth Amendment jurisprudence. *See Fellers,* 124 S.Ct. at 1022. Logically, every

---

1.   18 U.S.C. § 1001(a) reads as follows:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
shall be fined under this title or imprisoned not more than 5 years, or both.

point between the indictment and the disposition would then be considered part of the "judicial proceeding."

Given this background of common understanding, the statute is clear on its face that "in that proceeding" refers to statements that are made as a part of a judicial proceeding, after it has officially begun. Once McNeil was indicted, the criminal proceeding against him had begun. His statement to Magistrate Judge Cebull was made as a part of that proceeding and therefore is exempted from liability under § 1001.

Prior to the amendment of § 1001 in 1996, this circuit had drawn a distinction between documents submitted for "housekeeping" and "adjudicative" functions, imposing liability for false statements submitted for the former, but making an exception for statements submitted for the latter. *See, e.g., United States v. Plascencia–Orozco,* 768 F.2d 1074, 1076 (9th Cir.1985); *United States v. Mayer,* 775 F.2d 1387, 1391–92 (9th Cir.1985) (per curiam). We did so because the statute, at that time, did not itself provide an exception for statements made in the context of advocacy in a judicial proceeding. In 1985, § 1001 read as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title

or imprisoned not more than five years or both.

As drafted, that statute created very broad liability, covering statements "in any matter within the jurisdiction of any department or agency of the United States." *Id.* We concluded that "neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms 'conceals or covers up.'" *Plascencia–Orozco,* 768 F.2d at 1076 (quoting *Morgan v. United States,* 309 F.2d 234, 237 (D.C.Cir.1962)). Thus, we construed the statute in such a way as to contain a limitation, by holding that it did not apply to statements made in connection with a court's "adjudicative" function.

In crafting the new version of § 1001, however, Congress has obviated the concern that led us to create the judicial function exception, and the distinction we drew between "housekeeping" and "adjudicative" functions is no longer necessary. The plain language of § 1001(b) carves out an exception to the conduct defined in § 1001(a), and that exception applies broadly to *all* submissions to a judge or magistrate in a proceeding. The statute covers "statements, representations, writings, or documents," without regard to the purpose or nature of the submission. Thus, there is no longer any reason or need to recognize a distinction between "housekeeping" and "adjudicative" functions. In the plain, literal sense, McNeil's submission of the CJA–23 Financial Affidavit was a "document[ ] submitted by[him] to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b). Section 1001(b) therefore exempts McNeil from liability under § 1001(a).[2]

Attempting to uphold the conviction, the government urges us to consider both the

---

**2.** Submitting a false CJA–23 form may subject a defendant to criminal liability under other statutes, for example, under 18 U.S.C. § 1621, the general statute on perjury, or 18 U.S.C.

§ 1623, which punishes the making of a false material declaration in any proceeding before, or ancillary to, any court. However, the indictment against McNeil did not charge him

legislative history of the 1996 amendments to § 1001 and our precedent under the previous version of the statute. Neither is sufficient to override the plain meaning of the words in § 1001 as it has been amended. Resort to legislative history is justified only where the "'face of the Act is inescapably ambiguous.'" *Malcom v. Payne*, 281 F.3d 951, 961 (9th Cir.2002) (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., concurring)). Because the statute is not ambiguous, we need not look to the legislative history for further help in interpreting the statute.

The government argues that *United States v. Powell*, 708 F.2d 455 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), is precedential authority for us in determining whether the current § 1001 applies to McNeil. This is not the case. In *Powell* we held that an individual who gave a false statement to a magistrate judge when applying for leave to proceed in *forma pauperis* could be held liable under § 1001. However, we decided *Powell* under a different statute from the one used to convict McNeil because we applied the pre-amendment version of the statute. When we considered the judicial function exception to the statute in *Powell*, and two years later in *Plascencia–Orozco* and *Mayer*, we were mindful of the intended breadth of the statute, and so drew the contours of the exception narrowly to honor that breadth. However, in its amended statute Congress was more clear in its intentions and did not draw the exception so narrowly. In light of Congress's unambiguous amendment, we need not rely on our own interpretation of the unamended law.

Moreover, when Congress amends statutes, our decisions that rely on the older versions of the statutes must be reevaluated in light of the amended statute. *See Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1172 (9th Cir.2003) (stating that "we are not bound by decisions of prior panels if subsequent legislation has undermined those decisions"). Thus, we appropriately rely on our analysis of the amended statute to determine that Congress intended statements such as McNeil's to be protected by § 1001(b).

Because we hold that McNeil's statements were protected by § 1001(b), we do not reach his second argument that the jury should have been given a "good faith" instruction.

### III.  Conclusion

The amended version of 18 U.S.C. § 1001 is unambiguous on its face. Statements made in judicial proceedings are excluded from liability under the statute by subsection (b). Because McNeil's statements were made in a judicial proceeding, they are not subject to prosecution under this statute. His conviction is therefore REVERSED.

with having violated any statute other than 18 U.S.C. § 1001.