**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

WILLIAM CODY HORVATH,
            *Defendant-Appellant.*

No. 06-30447

D.C. No.
CR-06-00004-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
May 11, 2007—Portland, Oregon

Filed July 10, 2007

Before: Harry Pregerson, Pamela Ann Rymer, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Rymer

**COUNSEL**

Daniel R. Wilson, Measure, Robbin & Wilson, P.C., Kalispell, Montana, for the defendant-appellant.

Joshua S. Van de Wetering, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

**OPINION**

GRABER, Circuit Judge:

Any person who knowingly and willfully makes a materially false statement to the federal government is subject to criminal liability under 18 U.S.C. § 1001(a). Congress chose to exempt from criminal liability, however, false statements submitted to a judge by a party to a judicial proceeding. 18 U.S.C. § 1001(b). We must decide whether the exception in § 1001(b) for "statements . . . submitted by [a] party . . . to a judge" encompasses a false statement submitted to the judge in a presentence report ("PSR"), when the defendant in a criminal proceeding made the false statement to the probation officer during the defendant's presentence interview, rather than to the judge directly. We hold that when, but only when, the probation officer is required by law to include such a statement in the PSR and to submit the PSR to the judge, the statement falls within the exception in § 1001(b). We therefore reverse the district court's denial of Defendant's motion to dismiss the indictment.

FACTUAL AND PROCEDURAL HISTORY

On July 30, 2001, Defendant William Cody Horvath pleaded guilty to being a fugitive in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2). During the course of the judicial proceedings surrounding his plea,

Defendant stated that he had served in the United States Marine Corps. Defendant now admits, and the record shows, that he never served in the Marine Corps.

Defendant first made his false statement at the change of plea hearing. After the court accepted his plea, a probation officer conducted a presentence interview with Defendant for the purpose of preparing a presentence report. Defendant told the probation officer that he had served in the Marine Corps. The probation officer followed up on Defendant's statement and reported in the PSR:

> The defendant informed this officer that he was enlisted in the U.S. Marine Corps from May 1986 to May 1991 and received an honorable discharge. The defendant's highest rank was E5, and he received the Purple Heart for his service in Panama. The defendant advised that he was a field artillery spotter/scout and was based at Camp Lejeune, North Carolina. This officer requested documentation from the U.S. Marine Corps and the defendant to confirm the above information. At the time of this writing documentation or a DD214 was not available to this officer. At the time of the defendant's arrest in Spokane, Washington, he had in his possession a set of "dog tags" with the name William Horvath. The defendant's father informed that the defendant was in the U.S. Marine Corps.

The absence of documentary confirmation from the Marine Corps led the district court to question Defendant at the sentencing hearing about his alleged military service. Defendant was *not put under oath*, but his answers ultimately convinced the court of the truthfulness of his fabrications. In sentencing Defendant, the court relied on several mitigating factors, including Defendant's military service, to impose a lenient sentence: "I am going to go out on a limb in this case, Mr. Horvath, and what I'm going to do is put you on probation."

More than four years later, on January 4, 2006, the government determined that Defendant had lied about having served in the Marine Corps. The resulting indictment reads in its entirety:

> On or about the 9th day of August, 2001, at Missoula, in the State and District of Montana, WILLIAM CODY HORVATH, in a matter within the jurisdiction of the judicial branch, knowingly and willfully made a materially false statement, to wit: when speaking to a probation officer preparing a presentence report which would aid the court in determining his sentence, WILLIAM CODY HORVATH claimed to have served in the United States Marine Corps, when in truth and in fact he never served in the United States Marine Corps, in violation of 18 U.S.C. § 1001(a)(2).

Defendant moved to dismiss the indictment for failure to state an offense, arguing that 18 U.S.C. § 1001(b) prevented his prosecution as a matter of law. While his motion to dismiss was still pending, but with his trial date approaching, Defendant filed a motion to enter a conditional plea of guilty under Rule 11(a)(2) of the Federal Rules of Criminal Procedure. His plea was conditioned only on the reservation of the right to appeal any adverse ruling on his motion to dismiss. The district court accepted Defendant's conditional guilty plea, denied Defendant's motion to dismiss, and sentenced Defendant to four years of probation. This timely appeal followed.

## STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *United States v. McNeil*, 362 F.3d 570, 571 (9th Cir. 2004).

## DISCUSSION

[1] Defendant pleaded guilty to a violation of 18 U.S.C. § 1001(a)(2), which provides:

> *Except as otherwise provided in this section*, who-ever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> . . . .
>
> (2) makes any materially false, fictitious, or fraud-ulent statement or representation . . . [is criminally liable.]

(Emphasis added.) Defendant does not contest that he committed the proscribed conduct; that is, he knowingly and willfully made a materially false statement in a matter within the jurisdiction of the judicial branch of the Government of the United States. Instead, he argues that his conduct falls under the exception in § 1001(b), which provides:

> Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

**[2]** Section 1001(b) contains three requirements: Defendant "must show that (1) he was a party to a judicial proceeding, (2) his statements were submitted to a judge or magistrate, and (3) his statements were made 'in that proceeding.' " *McNeil*, 362 F.3d at 572 (quoting 18 U.S.C. § 1001(b)). The parties—and we—agree that the first and third requirements are met: Defendant was a party to a judicial proceeding and made his statement in that proceeding. The only issue in dispute is the second requirement: whether Defendant's false statement to the probation officer, which was submitted to the judge in the PSR, qualifies as having been "submitted by [a] party . . . to a judge." 18 U.S.C. § 1001(b).

Defendant's false statements at the change of plea hearing and at the sentencing hearing clearly fall under the protection of § 1001(b), because Defendant made the statements directly to a judge in a judicial proceeding.[1] The question in this case is whether Defendant's identical false statement, made to the probation officer during the presentence interview, likewise is protected by the exception that Congress created in § 1001(b). Because the probation officer was required by law to submit this particular false statement to the judge, we conclude that it is protected by § 1001(b).

**[3]** "A United States probation officer shall make a presentence investigation of a defendant that is required pursuant to the provisions of Rule 32(c) of the Federal Rules of Criminal Procedure, and shall, before the imposition of sentence, report the results of the investigation to the court." 18 U.S.C. § 3552(a). Rule 32(d)(2) of the Federal Rules of Criminal Procedure further specifies that "[t]he presentence report must . . . contain . . . the defendant's history and characteristics." A probation officer therefore is required to report all material aspects of a defendant's "history and characteristics" to the court in the PSR.

**[4]** As the government concedes, Defendant's alleged prior military service was material biographical information to be considered by the judge at sentencing. Indeed, § 1001(a) criminalizes only *material* lies, and the indictment accord-

---

[1]The indictment does not charge Defendant with any crime for his lies at those hearings. The indictment charges Defendant with a violation of § 1001(a) only for his false statement to the probation officer.

The record does not fully explain why the government did not charge Defendant with perjury for his false statement made under oath during the change of plea hearing. *See* 18 U.S.C. § 1621 (criminalizing perjury). The government suggested that its decision not to charge may have related to the materiality of the false statement. Although the false statement plainly was material at the sentencing hearing, it may have been difficult to prove the materiality of the false statement at the change of plea hearing, which concerned only Defendant's guilt.

ingly charged Defendant with having "knowingly and willingly made a *materially* false statement." (Emphasis added.) The materiality of Defendant's false statement is further demonstrated by the district judge's explicit reliance on Defendant's alleged military service in sentencing Defendant to a lenient sentence of probation. In summary, when Defendant told the probation officer that he had served in the Marine Corps, the probation officer was required by law to include the substance of that statement in the PSR. Dutifully performing his job, the probation officer did so: "The defendant informed this officer that he was enlisted in the U.S. Marine Corps from May 1986 to May 1991 and received an honorable discharge." And as required by law, the probation officer submitted the presentence report to the judge. *See* 18 U.S.C. § 3552(a) (requiring that "[a] United States probation officer shall . . . report the results of the [presentence] investigation to the court"); Fed. R. Crim. P. 32(g) (requiring that "the probation officer must submit to the court . . . the presentence report").

**[5]** A probation officer performs a large number of tasks unrelated to drafting a presentence report. *See, e.g.*, 18 U.S.C. § 3603 (listing the many "Duties of probation officers" concerning "Postsentence Administration"); *id.* § 3606 (permitting warrantless arrests by probation officers in certain circumstances). In performing those tasks, a probation officer exercises varying degrees of discretion and, except in certain narrow circumstances, labors under no statutory mandate to report particular comments to a judge. When the probation officer is conducting a presentence interview of a convicted defendant, however, he or she is "acting at the direction of the magistrate" or judge, *United States v. Gonzalez-Mares*, 752 F.2d 1485, 1493 (9th Cir. 1985), and is acting " 'as a neutral information gatherer for the judge,' " *United States v. Leonti*, 326 F.3d 1111, 1119 (9th Cir. 2003) (quoting *United States v. Gordon*, 4 F.3d 1567, 1571-72 (10th Cir. 1993)). *See also Williams v. Chrans*, 945 F.2d 926, 951 (7th Cir. 1991) ("neutral information gatherer for the court"); *United States v.*

*Johnson*, 935 F.2d 47, 49-50 (4th Cir. 1991) ("Throughout the process of interviewing a defendant [and] preparing a presentence report, . . . a probation officer continues to be a neutral, information-gathering agent of the court . . . ."); *United States v. Rogers*, 921 F.2d 975, 979 (10th Cir. 1990) (holding that, while conducting a presentence interview, the probation officer is acting as an "essentially neutral . . . agent of the court"); *United States v. Colon*, 905 F.2d 580, 588 (2d Cir. 1990) ("neutral information gatherer for the sentencing judge" (alteration and internal quotation marks omitted)); *Brown v. Butler*, 811 F.2d 938, 941 (5th Cir. 1987) ("an arm of the court"). Consistent with his role as a neutral, information-gathering agent of the court, the probation officer in this case reported, without superimposing any analysis of his own, both that "[D]efendant informed this officer that he was enlisted in the U.S. Marine Corps" and that the probation officer had "requested documentation from the U.S. Marine Corps . . . [but that, a]t the time of this writing[,] documentation or a DD214 was not available to this officer." It is clear from the neutral reporting in this PSR that the probation officer exercised no discretion in including Defendant's false statement made during the presentence interview.[2]

---

[2]A probation officer does retain some degree of discretion in performing other tasks related to the preparation of a presentence report, but none of that discretion operates here. For instance, the probation officer makes recommendations concerning appropriate adjustments for departures and enhancements, terms of supervised release, and the like. But in the section at issue here—describing a defendant's personal characteristics and history—the probation officer is simply obtaining and reporting factual information that Rule 32 requires and is not making any recommendations.

Similarly, a probation officer exercises some discretion in deciding how extensive an investigation to perform in response to a defendant's statement. Here, the probation officer contacted the Marine Corps and telephoned Defendant's father, stepmother, and wife. He could have done more follow-up, or less. But the fact that he exercised discretion in *following up* on Defendant's original false statement does not mean that the probation officer had discretion to exclude that statement from the PSR. Rule 32 and 18 U.S.C. § 3552 required him to report material aspects of Defendant's personal history.

**[6]** The probation officer here did not include, and the law did not require him to include, a verbatim transcript of Defendant's statement. The probation officer was free to choose the text that described Defendant's statement, so long as he conveyed the information accurately. But the absence of Defendant's own words does not detract from our conclusion that the probation officer was a mere conduit for this information. The relevance of Defendant's statement is not its phrasing, but the substance of his lie about having served in the Marine Corps. Rule 32 required the probation officer to include this (alleged) material personal history in the PSR, for submission to the judge.

**[7]** Nor does it matter that Defendant did not submit the statement *directly* to the judge.[3] The text of § 1001(b) does not require direct submission, and many typical submissions reach the judge indirectly. For example, parties commonly submit papers and filings to a judge by handing them to the clerk of the court or to a judicial assistant. As the government concedes, § 1001(b) protects those submissions. Similarly, a defendant would not lose the protection of § 1001(b) simply because he or she hired a courier to take a written statement to the judge.

**[8]** Because Rule 32 required the probation officer to submit Defendant's false statement of personal history to the judge, and because the probation officer exercised no discretion in doing so, he was acting as a conduit between Defendant and the judge. We therefore conclude that § 1001(b) protects Defendant's false statement.

Citing *McNeil*, 362 F.3d 570, the government urges us to

---

[3]It also does not matter whether the probation officer was performing a "housekeeping" function or an "adjudicative" function. *See McNeil*, 362 F.3d at 573 (holding that, after the 1996 amendments to § 1001, "there is no longer any reason or need to recognize a distinction between 'housekeeping' and 'adjudicative' functions").

resolve the case based on the purportedly plain text of § 1001(b).[4] In *McNeil*, the defendant had submitted a false financial statement to the court for purposes of seeking court-appointed counsel. *Id.* at 571. We held that the defendant's statements were submitted to the judge and focused on "the pivotal issue in th[e] case": whether the statement was made " 'in [a judicial] proceeding.' " *Id.* at 572 (quoting § 1001(b)) (second alteration in *McNeil*). We concluded that "the statute is clear on its face that 'in that proceeding' " includes all statements made after the defendant was indicted. *Id.* at 572-73. Because the text of § 1001(b) clearly controlled, we declined the government's invitation to examine the legislative history of the 1996 amendments and precedents pre-dating the 1996 amendments.[5] *Id.* at 573-74.

In this case, the government argues that, because Defendant made his false statement *to the probation officer* and not directly to the judge,[6] Defendant's conduct falls outside the plain text of the statute requiring that the statement be "submitted *by such party . . . to a judge*." 18 U.S.C. § 1001(b) (emphasis added). In other words, according to the govern-

---

[4]Section 1001 has been amended twice since our decision in *McNeil*. Those later amendments do not affect the analysis of the question that we face.

[5]In 1996, Congress amended § 1001 "to clarify the reach of the statute." *McNeil*, 362 F.3d at 571. Before 1996, a form of the exception now codified in § 1001(b) had been read into the statute by various circuits, including this one. *See Morgan v. United States*, 309 F.2d 234, 237 (D.C. Cir. 1962) (interpreting the text of § 1001 as requiring the exception); *United States v. Mayer*, 775 F.2d 1387, 1389 (9th Cir. 1985) (per curiam) (applying the exception). *See generally United States v. Butler*, 351 F. Supp. 2d 121, 128-32 (S.D.N.Y. 2004) (recounting the tortuous history of § 1001). Since the 1996 amendments, we have interpreted only once the exception as codified in § 1001(b), *McNeil*, 362 F.3d 570, and we appear to be the only circuit court to have done so.

[6]Although Defendant lied on three separate occasions—once to the judge under oath, once to the judge not under oath, and once to the probation officer preparing the PSR—the indictment charged him only for his misrepresentation to the probation officer. *See supra* note 1.

ment, "[i]n the plain, literal sense," Defendant's statements were *not* made by him to a judge, because they were made by him to the probation officer. *See McNeil*, 362 F.3d at 573 ("In the plain, literal sense, McNeil's submission of the CJA-23 Financial Affidavit was a 'document[ ] submitted by [him] to a judge or magistrate in that proceeding.' " (quoting § 1001(b)) (alterations in *McNeil*)).

We reject the government's reading of the phrase in question, because it is not the only obvious way to understand the text and thus is not "plain."[7] The government's interpretation focuses on "by" and "to" without considering the subtleties of the verb that Congress chose to use in § 1001(b). To be exempt from criminal liability, a statement must be "submitted" by a party to a judge. To "submit" commonly means, in this context, "to send or commit for consideration, study, or decision: [to] refer; . . . to present or make available for use or study." *Webster's Third New International Dictionary* 2277 (unabridged ed. 1993). As we have discussed above, and as the government acknowledges, parties often "submit" materials to judges by means of couriers, court clerks, secretaries, and other staff. That is, "submitted" is not necessarily the equivalent of "spoken in the presence of" or "handed to." Nor—as we have noted above—does the statute require that a statement must be submitted "directly" or "personally" to the judge. "[W]e may not add to the statute terms that Congress omitted." *Cavanaugh v. U.S. Dist. Court (In re Cavanaugh)*, 306 F.3d 726, 738 (9th Cir. 2002). Thus, a defendant does not lose the protection of § 1001(b) simply by using an intermediary. And, as we have explained, when a defendant

---

[7]We also note that the government's proposed construction fails to take account of the sweeping text of § 1001(b) and our previous broad interpretation of it. *See* 18 U.S.C. § 1001(b) (covering all "statements, representations, writings or documents" submitted by a party or counsel); *McNeil*, 362 F.3d at 572-73 (holding that all submissions made after a defendant is indicted are covered by § 1001(b)); *see also id.* at 573 (noting that the text of § 1001(b) "applies broadly to *all* submissions to a judge or magistrate in a proceeding").

makes a statement to a probation officer about material facts in the defendant's personal history, the probation officer is an intermediary.

**[9]** We pause to make explicit the limited reach of our holding. A defendant's statement to a probation officer is protected under § 1001(b) only if the law requires the probation officer to include the statement in the PSR and submit the PSR to the court. In these circumstances, the statement is submitted (albeit indirectly) by the defendant to a judge in a judicial proceeding. Because § 1001(b) extends the exemption only to parties and their counsel, statements by others (such as Defendant's father, who "informed [the probation officer] that the defendant was in the U.S. Marine Corps") are not protected by § 1001(b). Additionally, our holding in no way affects the ability of the government to prosecute defendants for perjury for lies told under oath.[8]

We need not, and do not, address the policy issues that inhere in the government's arguments. Our only task is to understand what Congress meant when it chose to exempt from criminal liability certain kinds of lies to the federal government. Under 18 U.S.C. § 1001(b), criminal liability does not attach to materially false statements submitted by a party to a judge in a judicial proceeding, even if the party makes the statements knowingly and willfully.

---

[8]To the extent that the government suggests that liability under 18 U.S.C. § 1001 does, or should, reach all materially false statements not covered by the criminal statute for perjury, 18 U.S.C. § 1621, we are not persuaded. Although § 1001 liability extends to statements not made under oath, there is no suggestion in the history of § 1001 or our precedents that every lie told to the judiciary entails either criminal liability for perjury under § 1621 or criminal liability for making a false statement under § 1001. The facts of this case provide one clear example: Defendant's false statement to the judge at the sentencing hearing, when he was not under oath, is plainly shielded from liability under both § 1621 and § 1001.

## CONCLUSION

Defendant's false statement to a probation officer was submitted, as required by law, to the district court in the presentence report, in connection with a judicial proceeding to which he was a party. The statement falls within the exemption from criminal liability codified in 18 U.S.C. § 1001(b). We therefore reverse the district court's denial of Defendant's motion to dismiss the indictment and remand with instructions to vacate Defendant's conviction and sentence.

**REVERSED and REMANDED.**

---

RYMER, Circuit Judge, dissenting:

This is a tough issue. Given that the majority sees the statute differently from the way I do, I take comfort in its effort to craft a narrow rule. Nevertheless, the choice boils down to: are all statements, representations, writings or documents given by a defendant to a probation officer in connection with the probation officer's preparation of a PSR "submitted . . . to a judge" for purposes of § 1001(b) — or, are they "submitted . . . to a [probation officer]." In my view, the conundrum is resolved by the statute itself.

Section 1001(b) says that it immunizes submissions by a party or that party's counsel "to a judge or magistrate." If this means what it says, then plainly and literally "to a judge" means *to* a *judge*.

I do not disagree that statements, representations, writings, or documents filed with or handed to a file clerk, or the judge's courtroom deputy clerk, or the judge's secretary, are "submitted . . . to the judge" because the judge would receive these things personally if only he or she had enough time and arms. In that role clerical staff are conduits in the purest sense

of the word. They don't add (or subtract) value; they simply transmit.

But a probation officer is quite different. In the capacity relevant here, preparation of a presentence report (PSR), a probation officer is an investigator and advisor who must gather, sort, and distill information that Federal Rule of Criminal Procedure 32 requires. That universe of information may include (but is by no means limited to) whatever the defendant, if he chooses to be interviewed, may impart. For sure, the *report* is submitted to a judge. Yet if the defendant submits to an interview, and makes a statement, he makes the statement to a probation officer; if he lies, he lies *to* the *probation officer*, not "to the judge."

The majority gets around this on the premise that Rule 32 requires a PSR to contain the defendant's history and characteristics; "[a] probation officer therefore is required to report all material aspects of a defendant's 'history and characteristics' to the court in the PSR," maj. op. at 8224; accordingly, anything a defendant says about his history and characteristics must be reported, so the probation officer is a mere conduit. But the syllogism fails because nothing in Rule 32 makes the probation officer a courier pigeon. The Rule simply lists among the items of information that a PSR must contain: "the defendant's history and characteristics," including prior criminal record, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or treatment. Fed. R. Crim. P. 32(d)(2)(A). Information about a "defendant's history and characteristics" may come from sources other than the defendant — and often does. Thus, the probation officer's obligation is to submit a report that contains information *on* the defendant's history and characteristics, not *from* the defendant.

*United States v. McNeil*, 362 F.3d 570 (9th Cir. 2004), does not control, or compel the majority's conclusion. Horvath seems to think so, in that *McNeil* immunized submissions by

or through an intermediary (in that case, the defendant's lawyer; in this case, the probation officer). However, § 1001(b) expressly contemplates submissions by a *party's counsel*, which is what happened in *McNeil* when the defendant's CJA-23 Financial Affidavit was completed with the assistance of a federal public defender and provided through him to the magistrate. 362 F.3d at 571. Thus, *McNeil* is most sensibly read as excepting a defendant who himself, or through *his* agents, communicates fabrications to the judge or magistrate. A probation officer is neither named in the statute — as is a party's counsel — nor, so far as I am aware, has a probation officer ever been thought of a defendant's agent.

*McNeil* may be instructive in a different sense, however, in that it embraces a "plain, literal sense" interpretation of § 1001(b). 362 F.3d at 573 ("In the plain, literal sense, McNeil's submission of the CJA-23 Financial Affidavit was a 'document[ ] submitted by [him] to a judge or magistrate in that proceeding.' ") (quoting the statute). In the "plain, literal sense," Horvath's statements to a probation officer are *not* "statements . . . submitted [by him] to a judge or magistrate." While it is true that the statute does not say "*directly* submitted," neither does it say "*effectively* submitted." Nor does § 1001(b) except "statements, representations, writings or documents submitted *by* a *probation officer* to a judge." Or statements "submitted by such party . . . *to a probation officer if the probation officer includes it in the report that the probation officer submits to a judge.*" Rather, the statute immunizes statements, representations, writings or documents submitted *to* the *judge*, *by* the *party*. In so stating, Congress specified the relevant submittor (a party — in this case, the defendant — or his attorney), and the relevant submittee — a judge.

No matter how apparent it may be to my colleagues, it is not obvious to me that the probation officer "exercised no discretion in including Defendant's false statement made during the presentence interview." Maj. op. at 8226. I am pretty sure that this information, like all information, was in the report

because of the probation officer's *judgment* that it should be. Horvath's statements did not pass through an empty pipe with the judge on the other end. The *probation officer* picked and chose in this case, as he picks and chooses in all cases, what to include and what to exclude based on his understanding of what is expected of him and what he believes it is important for the court and the parties to know.

Beyond this, while a defendant's statements to a probation officer may indirectly be for the judge's consumption, they are directly "to" the probation officer and directly influence the *probation officer*'s sentencing recommendations. By contrast, the defendant's direct shot at a submission *to the judge* is allocution. Fed. R. Crim. P. 32(i)(4)(A)(ii). *That* is plainly protected by § 1001(b).

Absent anything more concrete than the majority has pointed to, it is hard to believe that Congress intended the exception for submissions "to a judge" to encourage those convicted of federal crimes to fabricate tales to a probation officer for the purpose of influencing a more favorable sentence. While Congress obviously did intend to allow some false statements, representations, writings, and documents to be made to a judge in the course of adversarial litigation to avoid chilling advocacy on the margin between pushing the envelope and being misleading and lying, it did not immunize falsehoods altogether even in the judge's arena as it drew a line at knowingly making a false material statement under oath. 18 U.S.C. § 1623. Additionally, the adversary system, counsels' ethical obligations, and other means available to judicial officers kick in to further truth-seeking in the courtroom. Similar balances do not apply in the probation officer's arena. Statements to probation officers are not made under penalty of perjury and the process is not adversarial. Absent § 1001, there are scant incentives for truth-speaking.

In sum, the words "to a judge" seem clear to me. "To a judge" is not "to a probation officer." Thus, § 1001(b) in its

plain, literal sense excepts submissions *to a judge*, which a probation officer isn't. However, even if there is ambiguity, given a choice between immunizing all false statements made by a defendant to a probation officer in connection with sentencing and immunizing none of them, I would chose none. The same concerns that animate the exception for lies or misrepresentations to a judge and magistrate, who are adjudicative officers with other powers to deal with flagrant abuses of the process and with perjury, don't apply with the same force when lies are to probation officers, who perform functions that are vitally important to the administration of criminal justice but who are neither adjudicative officers nor armed with their authority.

Consequently, I dissent.