FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JONATHAN LEE OLIVER,
*Defendant-Appellant.*

No. 21-30137

D.C. No.
9:13-cr-00034-DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted March 9, 2022
Seattle, Washington

Filed July 22, 2022

Before:  Jacqueline H. Nguyen, Eric D. Miller, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's judgment revoking supervised release based on the defendant's committing a new crime, and the sentence imposed upon revocation.

The district court revoked the defendant's supervised release for violating 18 U.S.C. § 1001(a) by submitting a monthly supervision report with false statements to his probation officer. Section 1001(a) bars lying "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." The defendant argued that because the report was eventually forwarded to a judge, he's entitled to the exemption in 18 U.S.C. § 1001(b) for statements "submitted to a judge or magistrate" in a judicial proceeding. Rejecting this argument, the panel wrote that the judicial proceeding exception only protects statements made "by [the] party . . . to the judge or magistrate"—not statements made to others in the judicial branch. The panel emphasized that taking an expansive view of "submission" would threaten to swallow the rule, and would undermine the will of Congress, which broadly proscribed false statements made in "any matter" of the "judicial branch."

Relying on *United States v. Haymond*, 139 S. Ct. 2369 (2019), the defendant argued that the district court violated his Fifth and Sixth Amendment rights when it decided by the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

preponderance of the evidence that he violated § 1001 and sentenced him under an enhanced Guidelines range based on the criminal violation. The panel wrote that this argument is foreclosed by precedent, explaining that because a sentence for a supervised release violation is generally part of the penalty for the original offense, it is not a new and additional punishment requiring jury findings beyond a reasonable doubt.

## COUNSEL

John Rhodes (argued), Assistant Federal Defender; Rachel Julagay, Federal Defender; Federal Defenders of Montana, Missoula, Montana; for Defendant-Appellant.

Timothy J. Racicot (argued), Assistant United States Attorney; Shay Caldwell, Clinical Intern; Jesse A. Laslovich, United States Attorney; United States Attorney's Office, Missoula, Montana; for Plaintiff-Appellee.

**OPINION**

BUMATAY, Circuit Judge:

Federal law prohibits making false statements in a matter before the federal government. *See* 18 U.S.C. § 1001(a). But statements made to a "judge or magistrate" in a judicial proceeding are exempt from that prohibition. *See id.* § 1001(b). This case requires us to tackle whether lying to a probation officer can count as lying to a "judge" under § 1001(b).

Although Jonathan Lee Oliver lied in a report to his probation officer, he insists he's entitled to the judicial proceeding exception because the report was eventually forwarded to a judge. In this case, we hold that the obvious answer is the answer. Because the text of § 1001(b) cannot support Oliver's reading, we disagree. And because our precedent forecloses Oliver's constitutional challenge to his sentence for violating supervised release, we affirm.

**I.**

Using multiple aliases and businesses, Oliver defrauded dozens of victims of over $7 million. In 2014, Oliver pleaded guilty to federal charges of wire fraud, money laundering, and structuring. Oliver was sentenced to prison for 100 months followed by 36 months of supervised release. He was also ordered to pay over $5 million in restitution to his victims.

After serving his sentence, Oliver began his three-year term of supervised release in October 2020. As a condition of his supervised release, Oliver had to provide his federal probation officer with any requested financial information and notify the officer of any material changes in his

economic circumstances. He was also ordered not to incur any new lines of credit without the prior approval of his probation officer. The probation officer directed Oliver to submit a monthly financial report detailing his income, expenses, and net worth. But for the first five months of his supervision, Oliver provided no such report.

In March 2021, Oliver finally turned in a monthly supervision report. The form on which Oliver submitted the report warned him that "[a]ny false statements may result in revocation of probation, supervised release, or parole, in addition to 5 years imprisonment, a $250,000 fine, or both. Per 18 U.S.C. § 1001." Oliver signed the report and certified that all the information furnished was complete and correct. After reviewing the report, Oliver's probation officer determined that it was missing some financial information and supporting documents. When confronted, Oliver acknowledged that he omitted some supporting documentation and facts from the report. The probation officer then petitioned the district court to revoke Oliver's supervised release for failing to provide accurate financial information and traveling outside the state without permission.

The probation officer didn't stop there. He spoke with "Rose" Ozlem Ture, Oliver's supervisor, and learned that Oliver traveled outside the state on other occasions without permission, collected payments in cash and personal checks, once carried about $7,000 in cash, and used an unauthorized PayPal account. Soon after, the probation officer discovered materials in Oliver's possession showing that he was operating four companies without permission.

Nor did the officer stop there. He uncovered that Oliver used another man, Kirkland Conner, to start multiple companies, open bank accounts, sell items, and deposit

checks.  Oliver ran the businesses while informing Conner of only some of the financial arrangements.  According to Conner, Oliver admitted that he could not start these companies by himself because of his legal troubles and federal supervision.   Based on this investigation, the probation officer found that Oliver did not disclose multiple sources of income that could have been used to pay restitution.  Specifically, the probation officer found that Oliver received over $30,000 in income, but paid only $600 in restitution.

A few weeks later, the probation officer filed an amended petition for revocation of supervised release.  This time the probation officer alleged that Oliver committed a new crime—violating 18 U.S.C. § 1001.   The petition specified that Oliver submitted the March 2021 monthly supervision report with false statements about his vehicles, bank accounts, storage units, and net earnings.

In May 2021, the district court held a revocation hearing. Oliver contested the violations, but the district court found him in violation of § 1001 for making false statements in the monthly report as well as of other supervision conditions. The district court revoked Oliver's supervised release and sentenced him to 24 months of imprisonment, followed by another 32 months of supervised release.

Oliver now appeals.  First, he argues that the district court improperly revoked his supervised release based on the § 1001 violation since he was entitled to the judicial proceeding exception to that statute.   Second, Oliver contends that his constitutional rights were violated by the district court's finding that he committed a crime by a preponderance of the evidence.   We review Oliver's questions of statutory interpretation and constitutional rights

de novo.  *United States v. Vilchez*, 967 F.2d 1351, 1353 (9th Cir. 1992).

## II.

Section 1001 of Title 18 is a "sweeping" law that prohibits lying to the federal government.  *United States v. Rodgers*, 466 U.S. 475, 479 (1984).  The law bars "knowingly and willfully" lying "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  18 U.S.C. § 1001(a).  It applies to any person who "makes any materially false . . . statement or representation" or "makes or uses any false writing or document" knowing that it contains a materially false statement.  *Id.* § 1001(a)(2)–(3).  Violation of § 1001 can lead to a fine or imprisonment.  *Id.* § 1001(a).

But there's a carveout.  *See id.* § 1001(b).  Known as the "judicial proceeding exception," it exempts "statements, representations, writings, or documents submitted by [a party to a judicial proceeding] to a judge or magistrate in that proceeding."  *Id.* § 1001(b).  To satisfy the exception, a defendant must show that: "(1) he was a party to a judicial proceeding, (2) his statements were submitted to a judge or magistrate, and (3) his statements were made in that proceeding."  *United States v. Horvath*, 492 F.3d 1075, 1077 (9th Cir. 2007) (simplified).  So while § 1001 sweeps broadly, the judicial proceeding exception provides narrow protection from punishment.

In this case, the district court revoked Oliver's supervised release for violating § 1001(a) by submitting a monthly supervision report with false statements to his probation officer.  Oliver doesn't contest that he lied in the report or that the report was a matter within the jurisdiction

of the judicial branch.  Instead, Oliver maintains that his false statements fit within the judicial proceeding exception and so the revocation of his supervised release was improper. Because Oliver cannot satisfy the "submi[ssion] . . . to a judge" requirement, we disagree.

To meet the submission requirement, the false statements must be "submitted by [the] party . . . to a judge or magistrate."     18 U.S.C. § 1001(b).     To "submit" something in this context means "to send or commit [it] for consideration, study, or decision: [to] refer; . . . to present or make available for use or study." *Horvath*, 492 F.3d at 1081 (quoting Webster's Third New International Dictionary 2277 (unabridged ed. 1993)); *see also* 17 Oxford English Dictionary 46 (2d ed. 1989) (defining submit to mean "[t]o bring under a person's view, notice, or consideration; to refer to the decision or judgement of a person; to bring up or present for criticism, consideration, or approval").  So, to meet this requirement, the "party" must send, commit, refer, or present a false statement "to a judge or magistrate" for consideration, study, or decision.

This is a narrow but important requirement.  By its plain language, the judicial proceeding exception only protects statements made "by [the] party . . . to the judge or magistrate"—not statements made to others in the judicial branch.  Taking an expansive view of "submission" would threaten to swallow the rule.  After all, Congress broadly proscribed false statements made in "any matter" of the "judicial branch of the Government of the United States." 18 U.S.C. § 1001(a).  And extending "submission" to all judicial employees under the supervision of a judge or magistrate would undermine Congress's will.  The same goes for a statement that eventually makes its way—without the party's direction—to a judge or magistrate.  That others

in the judicial branch independently deem a statement worthy of a judge's attention does not satisfy the submission requirement.  In other words, if a party sends a statement to a judicial employee for the employee's consideration, study, or decision, then the party is *not* presenting it to a judge for the judge's consideration, study, or decision.

To be sure, we've held that some judicial branch "intermediar[ies]" may be such a direct conduit to a judge that the requirement is satisfied by submission to the intermediary.  *Horvath*, 492 F.3d at 1081.  For example, we've said that delivery of material to a judge "by means of couriers, court clerks, secretaries, and other staff" is sufficiently connected to a judge to meet the submission requirement.  *Id.*  We've also said that a defendant's interview with a probation officer before sentencing meets the submission requirement, but "*only* if the law requires the probation officer to include the statement in the [presentence report ("PSR")] and submit the PSR to the court."  *Id.* (emphasis added).  There, the probation officer is a "neutral, information-gathering agent of the court" who directs the defendant's statements to the judge "without superimposing any analysis of his own."  *Id.* at 1079.  We explicitly "limited [the] reach of our holding" in *Horvath* to that narrow circumstance of a pre-sentencing interview for preparing a PSR.  *Id.* at 1081.

None of *Horvath*'s exceptions apply here.  Oliver lied on a monthly supervision report provided to his probation officer during his term of supervised release.  Oliver's false statements were not made in a pre-sentencing interview where the probation officer "act[s] as a neutral information gatherer for the judge."  *Id.* at 1078 (simplified).  Nor did Oliver use the probation officer to deliver the report to the judge, like a courier or clerk would.

Rather, Oliver's false statements were made in the context of the probation officer's statutory duty to "keep informed" of his supervisee's "conduct and condition" and "report [such] conduct and condition to the sentencing court."    18 U.S.C. § 3603(2); *see also id.* § 3603(7) (requiring a probation officer to "keep informed concerning the conduct, condition, and compliance with any condition of probation" and "report thereon to the court").  Such a duty serves an important function.  Probation officers use this information "to aid" the defendant during the term of supervised release and to "bring about improvements in his conduct and condition."  18 U.S.C. § 3603(3).  Keeping informed—through the monthly supervision reports, meetings, and the like—permits the probation officer to "facilitate[] the implementation of supervision methods demonstrated . . . to be effective at achieving positive outcomes."  Administrative Office of U.S. Courts, Overview of Probation and Supervised Release Conditions 17 (2016).[1] So the information assists the probation officer in making important decisions, such as adjusting supervision techniques, and helping steer a defendant toward a successful term of supervision.

And the general requirement to "report" to the court does not transform the probation officer into a "mere conduit." *Horvath*, 492 F.3d at 1079.  Nothing in the reporting provisions requires a probation officer to transmit a defendant's verbatim statements or monthly supervision reports directly to the court.  If Congress wanted probation officers to simply deliver these reports to the court, it could have easily said so.  On the contrary, the law contemplates that a probation officer will use his discretion and judgment

---

[1] Available at: https://www.uscourts.gov/sites/default/files/overvie w_of_probation_and_supervised_release_conditions_0.pdf.

to determine what information to "report" to the district court. Indeed, a probation officer is expected to digest the information, verify it, and advise the court of pertinent information. So, at the supervision stage, the probation officer serves "as fact-gatherer, information-verifier, data-interpreter," and much more. *United States v. Manning*, 526 F.3d 611, 623 (10th Cir. 2008) (Gorsuch, J., concurring).

As the Sixth Circuit observed, "probation officers manage defendants under their supervision largely without the involvement of the judge, who does not normally review the probation officer's monthly reports, financial statements, and other paperwork unless there is a specific problem, a violation, or a termination of supervision." *United States v. Vreeland*, 684 F.3d 653, 664 (6th Cir. 2012). In this supervision context, the Sixth Circuit agreed with Judge Bea's assessment that:

> Equating lying to a probation officer with lying to a judge overlooks the differences in the roles of each person . . . . [A judge] does not conduct his own investigation; he does not interview witnesses outside of court; he does not independently verify information given to him. Instead, he must rely on the probation officer to investigate and verify information.

*Id.* (quoting *United States v. Horvath*, 522 F.3d 904, 912 (9th Cir. 2008) (Bea, J., dissenting from the denial of rehearing en banc)).

Oliver further argues that this situation is different because his false statements also constituted a crime and a probation officer has an independent duty to report such

offenses to the court.  *See* U.S.S.G. § 7B1.2 (generally requiring the probation officer to "promptly report to the court any alleged" criminal violation).  Even so, the probation officer still exercises considerable judgment in assessing what triggers the duty to report a criminal offense to the judge.  The probation officer doesn't just pass along information to the court hoping that the judge spots any criminal wrongdoing; the probation officer investigates, determines the truth, and then makes a recommendation to the court.

Let's look at what happened here.  Oliver submitted the monthly report in March 2021.  Without more, nothing would reveal that Oliver's report contained a false statement. Only after his probation officer carefully reviewed the report and thought something was amiss did any malfeasance surface.  To find the truth of the matter, the probation officer first approached Oliver, who acknowledged that he omitted certain facts from the report and didn't provide required documentation.  The probation officer then conducted an extensive investigation, first speaking with Oliver's employer, who observed Oliver carrying $7,000 in cash. The officer also found documents in Oliver's possession that showed that he was operating several businesses without the officer's permission.  The officer then interviewed Kirkland Conner, who revealed the vast extent of Oliver's business transactions and continued fraudulent activity.  Finally, after marshalling all the evidence, the probation officer filed a petition with the district court detailing seven potential violations, including the § 1001 charge.

Far from being a mere court delivery service without "superimposing any analysis of his own," *Horvath*, 492 F.3d at 1079, here the probation officer independently investigated facts, interviewed witnesses, gathered evidence,

evaluated that evidence, advocated for certain charges, and petitioned to revoke Oliver's supervision.  In other words, when Oliver submitted the monthly supervision report to his probation officer, it was for the *officer's* consideration, study, and decision—not the judge's.  He thus isn't entitled to the protection of the judicial proceeding exception.[2]

## III.

Oliver also challenges the constitutionality of his supervised release revocation.  Invoking the Fifth and the Sixth Amendments, Oliver asserts that a jury must find him guilty beyond a reasonable doubt before a court may revoke his supervised release under 18 U.S.C. § 3583(e) for committing a new crime in violation of his supervised release conditions.   The district court violated his constitutional rights, he argues, when it decided by the preponderance of evidence that he violated § 1001 and sentenced him under an enhanced Guidelines range based on the criminal violation.

Oliver relies on *United States v. Haymond*, 139 S. Ct. 2369 (2019), in which a plurality of Justices recently wrote to strike down 18 U.S.C. § 3583(k)'s mandatory minimum. That provision requires a court to revoke supervision and

---

[2] Although we do not reach the issue, there is reason to question whether Oliver was "a party to a judicial proceeding." *See Horvath*, 492 F.3d at 1077.  In the past, we've said that a "proceeding" under § 1001 "refers generally to legal actions." *United States v. McNeil*, 362 F.3d 570, 572–73 (9th Cir. 2004) (quoting Oxford English Dictionary (5th ed. 2002)).  In the criminal context, such proceedings "[l]ogically" encompass "every point between the indictment and the disposition" of the case. *Id.*  It's unclear what "judicial proceeding" existed when Oliver made the false statements here.  Unlike in *Horvath*, which took place pre-sentencing, Oliver had a "disposition" of his criminal case and was merely on supervised release.

sentence a defendant to at least five years for committing certain crimes while on supervised release. 18 U.S.C. § 3583(k). In the four-justice plurality opinion, Justice Gorsuch discussed the tensions between the rights guaranteed by the Fifth and Sixth Amendments and the judge-made factfinding that serves as the basis of supervised release revocations. 139 S. Ct. at 2376–78 (plurality opinion). As the Justice wrote, "[t]he Constitution seeks to safeguard the people's control over the business of judicial punishments by ensuring that any accusation triggering a new and additional punishment is proven to the satisfaction of a jury beyond a reasonable doubt." *Id.* at 2380. For example, the plurality noted that the Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), had invalidated a sentencing scheme that allowed a judge to increase a defendant's initial sentence beyond the statutory maximum based on judicial findings under the preponderance of the evidence standard. *Id.* at 2377. But the plurality opinion expressly limited itself to the mandatory-minimum context: Although "a jury must find any facts that trigger a *new* mandatory minimum prison term," it "does not mean a jury must find every fact in a revocation hearing that may affect the judge's exercise of discretion." *Id.* at 2380.

Indeed, in invalidating § 3583(k)'s mandatory minimum on narrow grounds, Justice Breyer's controlling concurrence did not sign off on the broader constitutional pronouncements made by the plurality opinion. *See id.* at 2385 (Breyer, J., concurring) ("[I]n light of the potentially destabilizing consequences [of the plurality opinion], I would not transplant the *Apprendi* line of cases to the supervised-release context."). Instead, Justice Breyer noted that aspects of § 3583(k), including its lack of sentencing discretion and lengthy mandatory minimum, make the punishment "less like ordinary revocation and more like

punishment for a new offense, to which the jury right would typically attach." *Id.* at 2386.

We need not venture too far here because our precedent forecloses Oliver's reading of *Apprendi* and *Haymond*. Well after *Apprendi*, we held "unequivocally" that imposing a term of imprisonment for violating supervised release is "part of the original sentence authorized by the fact of conviction and does not constitute additional punishment." *United States v. Huerta-Pimental*, 445 F.3d 1220, 1225 (9th Cir. 2006) (citing *United States v. Liero,* 298 F.3d 1175, 1178 (9th Cir. 2002)). And so there's "no right to a jury trial for such post-conviction determinations." *Id.* For the same reasons, "a judge's finding, by a preponderance of the evidence, that [a] defendant violated the conditions of supervised release [does not] raise Sixth Amendment concerns." *Id.*

Even after *Haymond*, we reaffirmed that the Fifth and Sixth Amendments do not prohibit a § 3583(e) post-revocation prison sentence based on judicial findings under a preponderance standard. *See United States v. Henderson*, 998 F.3d 1071 (9th Cir. 2021). We again explained that when a defendant receives a post-revocation sentence, we treat the "new sentence[] . . . , for constitutional purposes, 'as part of the penalty for the initial offense.'" *Id.* (quoting *Johnson v. United States*, 529 U.S. 694, 700 (2000)). As such, a custodial term for supervised release violations "does not trigger the [same] constitutional analysis" as a term imposed at initial sentencing. *Id.* at 1074. So a revocation sentence that prolongs a defendant's total sentence "beyond the maximum sentence for the underlying crime" does not offend *Apprendi*. *Id.* And after carefully examining *Haymond*, we concluded that the Court did not "hold that the right to jury findings proved beyond a reasonable doubt

recognized in *Apprendi* extends to a revocation of supervised release hearing." *Id.* at 1072.

Because a sentence for a supervised release violation is generally part of the penalty for the original offense, it is not a new and additional punishment requiring *Apprendi*-style jury findings beyond a reasonable doubt. That is true even when the violative act is a criminal offense with no mandatory minimum revocation sentence, as is the case here. We thus reject Oliver's argument that the district court's revocation of his supervised release and sentence for violating his supervised release conditions were unconstitutional.

## IV.

For the reasons above, we affirm the district court's judgment.

**AFFIRMED.**