NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 7 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff - Appellee,<br><br>v.<br><br>ANTHONY MICHAEL PRANZETTI,<br><br>  Defendant - Appellant. | No. 23-3521<br><br>D.C. No.<br>3:10-CR-00354-IM-1<br>District of Oregon<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Submitted February 5, 2025**
Portland, Oregon

Before: BEA, KOH, and SUNG, Circuit Judges.

Anthony Michael Pranzetti appeals the judgment of the district court

revoking his supervised release and sentencing him to fourteen months in custody.

The district court did so after finding that Pranzetti committed two Grade C

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

violations[1] while on supervised release. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. §§ 1291 and 1294, and we affirm.

1. Pranzetti first argues that the district court violated his due process right to confrontation at the revocation hearing. Whether a defendant has received adequate due process at a supervised-release revocation hearing is a mixed question of law and fact that we review de novo. *See United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008). "Less process is due" at revocation hearings, and "that process must be flexible enough" to balance the releasee's "right to confrontation against the Government's good cause for denying it." *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987). If we find a due process violation, we must assess whether the violation was harmless beyond a reasonable doubt. *See United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999).

*First*, the district court did not violate Pranzetti's Fifth Amendment due process right to confrontation when it allowed two police officers to testify by video and allowed the Government to offer hearsay evidence. Officers Garrett Walecki ("Walecki") and Brandon Matz ("Matz") (collectively, the "Officers") testified under oath and were cross-examined via video conference. The Officers lived over 2,000 miles away from the location of the supervised-release revocation

---

[1] Pranzetti's two Grade C violations were (1) disorderly conduct and (2) unlawful possession of a controlled substance, in this case marijuana.

2

hearing, and in-person testimony would have required significant time and travel expense and strained the staffing resources of their home police department. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5 (1973) (holding that "the difficulty and expense of procuring witnesses from perhaps thousands of miles away" may justify an "alternative to live testimony"). Pranzetti provides no support for his assertion that his right to confrontation was compromised by the remote testimonies.

*Second*, the district court did not violate Pranzetti's right to confrontation when it allowed the Government to submit hearsay evidence. This evidence included the affidavit of the witness who accused Pranzetti of sexually assaulting her on the Greyhound bus ("LB"), LB's contemporaneous text messages, LB and another witness's ("AK") written statements, and body-camera footage of AK's interview.

Here, the hearsay evidence was reliable. *See Comito*, 177 F.3d at 1171 ("[T]he more subject to question the accuracy and reliability of the proffered evidence, the greater the releasee's interest in testing it by exercising his right to confrontation."). It was internally consistent, *see United States v. Hall*, 419 F.3d 980, 988 (9th Cir. 2005) (holding that a victim's testimony could be admitted despite her failure to appear at the revocation hearing because it was consistent with the victim's statements to others), and consistent with the Officers' perceptions of the witnesses during the on-scene interviews. *See id*. at 987–88

3

(concluding that hearsay evidence was more reliable where victim's physical response was consistent with her hearsay statement describing the disputed occurrence).[2]

For its part, the Government offered good cause for not producing AK and LB at the revocation hearing and provided adequate substitutes for their live testimony. *See United States v. Martin*, 984 F.2d 308, 313 (9th Cir. 1993) (providing conventional "substitutes for live testimony identified by the Supreme Court, including affidavits, depositions, and documentary evidence," weighs in favor of good cause (internal quotation marks and citation omitted)). LB lived out of state, *see id.* (holding that difficulty and expense of procuring a witness constitutes good cause when the government provides any substitute for live testimony), and suffered trauma from her interaction with Pranzetti. *See Hall*, 419 F.3d at 988 (concluding that the government had good cause for not producing a witness who was the victim of violence and feared testifying against her assailant). AK was homeless, and the Government was unable to contact him. *See id.* (finding

---

[2] Moreover, evidence that falls under a hearsay exception is often considered more reliable and is thus more likely to satisfy a releasee's right to confrontation in revocation hearings. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 990 (9th Cir. 2010). LB's contemporaneous text messages may fall under the present sense impression, *see* Fed. R. Evid. 803(1), and excited utterance, *see* Fed. R. Evid. 803(2), exceptions to hearsay. And LB's subsequent on-scene written statement prepared by Matz may fall under the excited utterance exception.

good cause when the government could not locate "a homeless woman who left the shelter where she was staying . . . and had not been heard from since").

*Third*, even if the district court improperly denied Pranzetti the right to recross Walecki, any error was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that the factors to consider in determining harmlessness of a district court's refusal to allow recross examination include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case"). Pranzetti does not show, nor does the record suggest, that the opportunity for recross would have affected the outcome of his case.

2. Pranzetti also argues that he was denied his Sixth Amendment and Article III rights to a jury trial. A defendant's entitlement to a jury trial is a question of law that we review de novo. *See United States v. Charette*, 893 F.3d 1169, 1172 (9th Cir. 2018). Under our binding precedent, Pranzetti has no right to a jury trial for his supervised release hearing.

We have held that the Sixth Amendment does not require a jury trial in supervised-release revocation hearings under 18 U.S.C. § 3583(e). *See United States v. Henderson*, 998 F.3d 1071, 1072 (9th Cir. 2021) (concluding that "the

5

right to jury findings [does not] . . . extend[] to a revocation of supervised release hearing"); *United States v. Oliver*, 41 F.4th 1093, 1101 (9th Cir. 2022) (same); *United States v. Richards*, 52 F.4th 879, 885 (9th Cir. 2022) (same). Similarly, the Supreme Court has stated that Article III's right to a jury trial mirrors that of the Sixth Amendment. *See Callahan v. Wilson*, 127 U.S. 540, 549 (1888) ("And as the guaranty of a trial by jury, in [Article III], implied a trial in that mode, and according to the settled rules of common law, the enumeration, in the [S]ixth [A]mendment, of the rights of the accused in criminal prosecution, is to be taken as declaration of what those rules were."); *Schick v. United States*, 195 U.S. 65, 78 (1904) (Harlan, J., dissenting) (concluding that the Sixth Amendment set forth "the essential features of the trial required by . . . [A]rticle [III]. "In other words, the trial required by that section is the trial referred to in the [Six]th Amendment.").

Thus, Pranzetti's argument is foreclosed.[3]

**AFFIRMED.**

---

[3] Pranzetti also argues that revocation of his supervise release was triggered by a "new criminal offense," which entitles him to a jury trial. This argument fails as well. *See United States v. Huerta-Pimental*, 445 F.3d 1220, 1225 (9th Cir. 2006) ("Unequivocally [the] imposition of imprisonment following the revocation of supervised release is part of the original sentence authorized by the fact of conviction and does not constitute additional punishment." (citing *United States v. Liero*, 298 F.3d 1175, 1178 (9th Cir. 2002))).

6