**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

          v.

WILLIAM CODY HORVATH,
              *Defendant-Appellant.*

No. 06-30447

D.C. No.
CR-06-00004-DWM

ORDER

Filed April 9, 2008

Before: Harry Pregerson, Pamela Ann Rymer, and
Susan P. Graber, Circuit Judges.

Order;
Concurrence by Judge Graber;
Dissent by Judge Bea;
Dissent by Chief Judge Kozinski

## ORDER

Judges Pregerson and Graber voted to deny the petition for rehearing en banc, and Judge Rymer voted to grant it.

The full court was advised of the petition for rehearing en banc. A judge of the court called for a vote on whether to rehear the matter en banc. The majority of the nonrecused active judges failed to vote in favor of en banc rehearing.

The petition for rehearing en banc is DENIED. With this order the Clerk shall also file Judge Graber's concurrence, Judge Bea's dissent from denial, and Chief Judge Kozinski's dissent from denial.

GRABER, Circuit Judge, with whom Judges WARDLAW, GOULD, and PAEZ, join, concurring in the denial of rehearing en banc:

I write separately to address one critical error made by Judge Bea's dissent about the role of a probation officer.[1] The dissent's view of that role is both impractical and inconsistent with the applicable federal rule.

When a defendant makes a material statement about his or her personal history, the probation officer must, by law, include that statement in the presentence report ("PSR"). 18 U.S.C. § 3552(a); Fed. R. Crim. P. 32(d)(2). I agree with the dissent that "[t]he probation officer is required to investigate the truth of the defendant's statements and tell the judge if his investigation reveals facts that undercut the defendant's representations." Dissent at 3690. That is, in fact, precisely what the probation officer did in this case.

Regrettably, the dissent sees another option. The dissent asserts, quite cryptically, that the probation officer need not include a defendant's material statement of personal history and may, instead, "report that the defendant relayed information regarding his military service, education level, etc., but that the probation officer has not included such information in

---

[1] I also note that the dissent incorrectly states that "the Fourth Circuit . . . held that a criminal defendant may be prosecuted under 18 U.S.C. § 1001(a) for lying to his probation officer." Dissent at 3688-89. In *In re Morrissey*, 305 F.3d 211, 212 (4th Cir. 2002), the Fourth Circuit addressed legal questions concerning disbarment of a lawyer. The question before the court was whether the lawyer should be disbarred for "egregious conduct over a period of years." *Id.* at 213. One of the events was a conviction for lying to a probation officer under 18 U.S.C. § 1001(a), but that was just an underlying fact, not an independent legal issue addressed by the court. The court merely described the lawyer's unfortunate history; it did not address *any* arguments related to § 1001, let alone the exception interpreted by the *Horvath* majority: § 1001(b). Indeed, subsection (b) was not even *mentioned* in the opinion. Under any notion of *stare decisis*, the Fourth Circuit clearly has not addressed the issue resolved by *Horvath*.

the PSR because it does not have 'sufficient indicia of reliability.' " Dissent at 3697.

It is hard to imagine what the dissent envisions. Perhaps the probation officer would report: "The defendant said something about military history [or education level or any other material fact] but I am omitting that statement and the results of my investigation because I have concluded that the defendant's statement is unreliable." Why wouldn't the probation officer just include the statement and the results of the investigation (as was done here)? Excluding those facts would frustrate the *raison d'etre* of the presentence report: to provide the district court with all relevant information about the defendant's personal history.

More to the point, there is no support for the dissent's peculiar assertion. The dissent does not rely on a single judicial authority for such a procedure, because none exists. Instead, the dissent cites a document that it titles the "PSR Manual." But even the portions of the PSR Manual cited by the dissent demonstrate that " '[t]he probation officer is responsible for gathering *all pertinent facts about the defendant* . . . and presenting the information in an organized, *objective* report.' " Dissent at 3696 (quoting PSR Manual at II-1) (emphases added).

The dissent argues that such "facts" are not facts unless shown to be reliable. The PSR Manual does state that, although "[t]he court is not bound by the Federal Rules of Evidence at sentencing[,] . . . [the] information should have [ ] 'sufficient indicia of reliability to support its probable accuracy.' " PSR Manual, III-2. But that passage makes clear that those guidelines apply only to "out-of-court statements *made by someone other than the defendant*." PSR Manual at III-3 (emphasis added). In other words, that section simply does not apply at all to statements made by the defendant.

It is no accident that the PSR Manual limits that section to statements made by someone other than the defendant. As the

PSR Manual explains, the reliability requirement stems from the fact that, although district courts may consider a wider range of hearsay evidence at sentencing than the Federal Rules of Evidence would permit, the evidence still must meet the minimum requirement of having sufficient indicia of reliability. But, as explained by the cases cited by the PSR Manual, that reliability requirement arises from *the defendant's right to due process*. *See United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993) (as amended) ("Although the Confrontation Clause does not apply at sentencing, a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information. Due process requires that some minimal indicia of reliability accompany a hearsay statement." (citation omitted)). The inclusion in the PSR of the defendant's *own* statement to the probation officer, whether reliable or not, does not offend the defendant's right to due process. In short, the reliability rule does not apply to the defendant's own statements made to the probation officer during a presentence interview.

That conclusion makes practical sense as well. The main reason why hearsay is generally inadmissible is that the court has no way to assess the credibility of the speaker or the circumstances in which the speaker made the statement. In contrast to statements made by others, statements by a defendant *can* be examined by the court during the sentencing hearing. In fact, that is exactly what happened in this case: the sentencing judge questioned Defendant at length about his alleged military service. In other words, the reasons to exclude hearsay evidence from the sentencing process simply are not present when the statement is made by the defendant.

The dissent's view threatens to undermine the proper functioning of the probation office. The probation officer in this case did a commendable job: Defendant said that he served in the military. The probation officer investigated that statement and discovered that it was unverified. The probation officer reported *both facts*—that Defendant made the statement and

that the statement was unverified—in an *objective* manner. At sentencing, the district court then was able to question Defendant and rule on the factual issue.

The probation officer's objective presentation of this unfiltered information to the district court fulfilled precisely what the rules contemplate. Federal Rule of Criminal Procedure 32 sets out the requirements for a presentence investigation and a presentence report. In some particulars, Rule 32 demands the inclusion of only *verified* information. For example, a "presentence report must . . . contain . . . *verified* information, stated in a nonargumentative style, that assesses the financial, social, psychological, and medical impact on any individual against whom the offense has been committed." Fed. R. Crim. P. 32(d)(2)(B) (emphasis added). *Unverified* claims are to be excluded. That limitation does not appear in Rule 32(d)(2)(A), which requires a PSR to include "the defendant's history and characteristics." In other words, a probation officer must alert the district court when a defendant's reported personal history is unverified, but the rule plainly does not allow the probation officer to *omit* unverified, material aspects of the defendant's stated personal history.

Probation officers exercise a fair amount of discretion in preparing a presentence report. But screening out a defendant's material statements of personal history is beyond the scope of that discretion. No matter what one's view of the underlying question of statutory interpretation, a probation officer who heeded the dissent's advice would act contrary to Federal Rule of Criminal Procedure 32 and would ill serve the district court, which is charged with resolving factual disputes about the accuracy of the PSR. Fed. R. Crim. P. 32(i)(3).

BEA, Circuit Judge, with whom Chief Judge KOZINSKI, and Judges O'SCANNLAIN, KLEINFELD, TALLMAN, BYBEE and CALLAHAN join, dissenting from the denial of rehearing en banc:

Horvath is a slippery customer, in more ways than one. First, he escaped from prison. Captured with a gun in his possession, he pleaded guilty to being a "fugitive with a firearm" in violation of 18 U.S.C. § 922(g). Interviewed by his probation officer, but not under oath, Horvath concocted a tale of his service for his country in the United States Marine Corps. He went so far as to claim he received a Purple Heart for his wound in Panama. To help prove his claim, he showed the probation officer "dog tags" with his name on them. He sold this tale to his probation officer, who included it in his presentence report ("PSR") to the sentencing judge as a mitigating factor.

When the truth came out—Horvath never served a minute in the Marines—he was indicted for making a materially false statement to an officer of the judicial branch, in violation of 18 U.S.C. § 1001(a). He entered a conditional guilty plea and appealed on the ground that he had committed no crime. The majority of the panel agrees with Horvath, finding the probation officer is *required by law* to present the defendant's statement to the judge in the PSR *verbatim*, because the probation officer is nothing more than a mere conduit to the judge. *United States v. Horvath*, 492 F.3d 1075, 1078-80 (9th Cir. 2007). This is the only justification for the majority's holding. Thus, the majority holds the statements made by a party to a "probation officer" are exempt from prosecution under 18 U.S.C. § 1001(b), which in fact exempts only statements made by a party or his attorney "to a judge or magistrate."

The majority's holding that a person cannot be prosecuted under § 1001(a) for false statements made to a probation officer creates tension with the Fourth Circuit, which held that a criminal defendant may be prosecuted under 18 U.S.C.

§ 1001(a) for lying to his probation officer. *See In re Morrissey*, 305 F.3d 211, 218 (4th Cir. 2002) (affirming the disbarment of an attorney who had been convicted under 18 U.S.C. § 1001(a) for lying to his probation officer).[1] Although *Morrissey* did not specifically address the argument made by appellant here, neither did it hold § 1001(b) exempted from prosecution statements made to a probation officer.

Nevertheless, this is not the worst aspect of the majority's reasoning. The worst aspect is in the majority deciding that we should be the entity to grant immunity under 18 U.S.C. § 1001(b), where Congress did not see fit to grant such immunity. If Congress had wanted to exempt statements made by a defendant to a probation officer, then Congress knew how to do it. Instead, Congress chose to exempt only statements made by a party or his counsel "to a judge or magistrate." 18 U.S.C. § 1001(b).

## I. The majority's ruling goes against the statutory language.

Under 18 U.S.C. § 1001(a), "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . ." is criminally liable. "Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b).

---

[1]The exemption for statements made by a party to a judge or magistrate in 18 U.S.C. § 1001(b) was first enacted on October 11, 1996, before *Morrissey* was decided. *See* The False Statements Accountability Act of 1996, Pub. L. 104-292, 110 Stat. 3459, § 2. Thus, if that exemption applied to statements made to a probation officer, Morrissey could not have been convicted on that basis. Although Morrissey was not as creative as Horvath in his legal arguments, the facts of that case are indistinguishable from the facts of this case for our purposes.

Words in a statute should be given "their ordinary, contemporary, common meaning unless they have been otherwise defined." *United States v. McNeil*, 362 F.3d 570, 572 (9th Cir. 2004) (citation and internal quotation marks omitted). The majority correctly holds the word "submitted" does not "require that a statement must be submitted 'directly' or 'personally' to a judge." *Horvath*, 492 F.3d at 1081. Thus, a party is protected by § 1001(b) when he submits a document or statement to a docketing clerk who then passes that statement or document, untouched by evaluation or comment, to the judge. Unlike the docketing clerk, who cannot comment on the parts of papers filed which lack credibility, the probation officer is instructed to do just that. The majority's reasoning, however, extends the exemption beyond what the statutory language can bear. By equating a probation officer with a judge or magistrate, the majority forgets the completely different role each plays.

## II. The probation officer is not a mere conduit for information.

The majority's sole rationale for disregarding the unambiguous language of the statute is its characterization of the probation officer as nothing more than a mere conduit of information to the judge.[2] For this novel proposition, the majority cites—nothing. Why? Because there is no authority for stating the probation officer is merely "a conduit." It simply is not accurate. The probation officer is required to investigate the truth of the defendant's statements and tell the judge if his investigation reveals facts that undercut the defendant's representations. A conduit is not someone who verifies or refutes assertions made by the defendant. A conduit is not someone who independently investigates facts, interviews witnesses, and comments upon the information. No, a conduit is someone who simply relates what the defendant says, with-

---

[2]A conduit is defined as "[a] means by which something is transmitted." The American Heritage Dictionary 394 (3rd ed. 1992).

out comment. The Dow Jones ticker tape is a conduit; the Wall Street Journal is not. As Judge Rymer writes in her forceful dissent, "nothing . . . makes the probation officer a courier pigeon." *Id.* at 1082 (Rymer, J., dissenting).

Federal Rule of Criminal Procedure 32 mandates that, with very limited exceptions, the probation officer must conduct a presentence investigation and write a report of his findings. Fed. R. Crim. P. 32(c). The rule contemplates that the defendant may object to the information the probation officer includes, or omits, from the report. *Id.* 32(f).

Rule 32 specifically anticipates that a probation officer will make factual findings and omit irrelevant or false information. For this reason, it requires the probation officer to give a copy of the PSR to the defense and prosecution at least 35 days before sentencing so that the parties may object. *Id.* 32(e)(2). The probation officer's recommended findings are so important that "[a]t sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact." *Id.* 32(i)(3)(A); *see also United States v. Manarite*, 44 F.3d 1407, 1419 & n.18 (9th Cir. 1995) (holding the defendants waived their objections to the PSR by withdrawing the objections at the sentencing hearing).

Indeed, the probation officer supplies the judge not only with information, but also with sentencing recommendations:

> [A] probation officer's role in guidelines sentencing goes beyond adding and subtracting points: "[N]othing will preclude the probation officers from giving *departure* recommendations (up or down) to district judges for their consideration." *Id.* at 1098 (emphasis added); *see also United States v. Belgard*, 694 F. Supp. 1488, 1496 (D. Or. 1988) ("The probation officer furnishes not information alone, but also his or her insight into the matters covered by the presentence report. The probation officer's role includes

. . . offering a recommendation as to the ultimate sentencing decision of the judge.").

*United States v. Sifuentez*, 30 F.3d 1047, 1049 (9th Cir. 1994) (emphasis in original).

Not only must the probation officer give his report to the defendant in advance of sentencing so that the defendant has an opportunity to formulate his objections, the court may even permit the defendant to present evidence in support of his objections at the hearing. Fed. R. Crim. P. 32(e)(2). If the defendant objects to the PSR, the district court must either rule upon the objections or state on the record that it did not consider the disputed portion of the PSR in determining the sentence. *Id.* 32(i)(3)(B); *see, e.g., United States v. Bussell*, 504 F.3d 956, 965-66 (9th Cir. 2007) (reversing and remanding in part for a new sentencing hearing because the district court did rule upon objections to the amount of loss calculated in the PSR); *United States v. Herrera-Rojas*, 243 F.3d 1139, 1142-43 (9th Cir. 2001) (reversing and remanding for new sentencing where the district court failed to rule on, or even mention, the defendant's objections to the PSR).

The procedures outlined in Rule 32 have been used in many of our cases where the defendant objected to the PSR. *See, e.g.*, *United States v. Ochoa-Gaytan*, 265 F.3d 837, 841-42 (9th Cir. 2001) (after defendant objected, the probation officer amended the PSR and recommended the defendant be given an additional downward departure for acceptance of responsibility); *United States v. Maldonado*, 215 F.3d 1046, 1049-50 & n.3 (9th Cir. 2000) (affirming a conviction and holding the district court did not violate the rule it must resolve all objections to the PSR because no matter was controverted); *United States v. Gonzales*, 16 F.3d 985, 987 (9th Cir. 1994) (holding, *inter alia*, the district court erred in not granting a downward departure for acceptance of responsibility as recommended in the PSR).

Making recommendations to a judge regarding both legal and factual matters is hardly what a mere conduit does, and yet it is the everyday job of a probation officer. *See, e.g.*, *Bussell*, 504 F.3d at 965-66; *Herrera-Rojas*, 243 F.3d at 1142-43; *Maldonado*, 215 F.3d at 1049-50 & n.3; *Gonzales*, 16 F.3d at 987. I entirely agree with the majority that in the end it is up to the district court to decide factual disputes, and that a probation officer has a duty to present all relevant information in an organized, objective report. Nonetheless, this does not make him a conduit.

## III.   All facts in the PSR must have sufficient indicia of reliability.

Judge Graber states in her concurrence that while other information must bear sufficient indicia of reliability to be included in the PSR, there is no such requirement for statements made by the defendant. Underpinning the panel's decision seems to be the assumption that the probation officer is required to pass on to the judge the defendant's statements about his military service, family situation, education, etc., all without comment or cavil.[3] This assumption ignores the

---

[3]My concurring colleagues find it "hard to imagine what the dissent envisions" the probation officer should do if defendant makes a statement about his personal history that is shown to be false. Concurrence at 3685. But it's not so hard; I'm happy to help out with a few examples: Let's say defendant tells the probation officer that he was employed as a professor of nuclear physics at Cal Tech. for a number of years, or that he is a virtuoso pianist who had frequent curtain calls at Carnegie Hall, or that he is the former Governor of California. And let's say these statements turn out not to be true. The probation officer would *not* list defendant's personal history as being a "nuclear physicist," "concert pianist" or "Governor of California," because those occupations are simply not part of his personal history; they are the delusions of someone who is mentally ill or (as in Horvath's case) the fabrications of a liar. If there were some genuine dispute as to whether defendant was, in fact, a nuclear physicist, the probation officer should list it as part of the defendant's personal history and express his doubts. But pure fabrications with no support anywhere except in the defendant's imagination, are not facts; they are precisely the kind of detritus the probation officer is expected to weed out.

express standards to be applied to *all* information included in the PSR.

The duties of the probation officer in compiling the PSR are detailed in Volume 10, Chapter 2 of the Probation Manual published by the Administrative Office of the Courts. This manual describes in great detail what qualifications a probation officer is required to have, and exactly how a probation officer is to prepare the presentence investigation report. *See* The Presentence Investigation Report; Office of Probation and Pretrial Services (Rev. March 2006) [*hereinafter* PSR Manual], *available at* http://jnet.ao.dcn/img/assets/5661/ Publication107March006.pdf (last visited March 17, 2008). This Manual, along with Rule 32 and the Sentencing Guidelines, makes clear the standards to be applied to all information included in the PSR:

> As a general rule, based upon the officer's conclusions from the presentence investigation, *the report contains only information that the probation officer believes to be accurate*. The objective is to produce information that the court may rely upon at sentencing.

---

If the probation officer believes the defendant tried to deceive him, then the *deception* becomes a fact that the probation officer would have reason to include in the report—but not as part of defendant's personal history, rather in the portion of the report dealing with defendant's character or acceptance of responsibility. However, the relevant fact being reported isn't defendant's purported experiments with fusion in a bathtub, but his mendacity to the probation officer. Then, again, the officer may decide the defendant intended no deception, but was just trying to be funny, or had not taken his medications. In that case, the probation officer might well be justified in saying nothing at all on the matter, or in suggesting that the court might want to order a psychiatric evaluation. But that is a decision the probation officer must make based on his professional judgment, which is why it is so very important to ensure that his judgment is not confounded by defendants who lie.

* * *

**Standard of Proof**

> While the court may consider a vast amount of infor-mation in determining an appropriate sentence, it is important that the probation officer distinguish between information that is factual, inferred, or alleged . . . *information should have a "sufficient indicia of reliability to support its probable accura-cy."*

PSR Manual III-1 to III-2 (emphasis added); *see also* U.S.S.G. § 6A1.3 cmt. These standards are not limited to hearsay evidence. They apply to all information included in the PSR. Moreover, the probation officer must independently verify all information supplied by the defendant or others. PSR Manual at II-17. In other words, the probation officer is never required to take a defendant's statement at face value.

Judge Graber states in her concurrence that this standard of proof does not apply to statements made by the defendant. The Sentencing Guidelines, however, make no such distinc-tion:

> (a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may con-sider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

> (b) The court shall resolve disputed sentencing fac-tors at a sentencing hearing in accordance with Rule 32(i), Fed. R. Crim. P.

U.S.S.G. §6A1.3 Resolution of Disputed Factors (Policy Statement).

Nowhere in the Federal Rules of Criminal Procedure, the Sentencing Guidelines, or the PSR Manual does one find any requirement that the probation officer relay inaccurate information to the judge simply because the defendant was the source of that information. Instead, when interviewing a defendant about his personal history and characteristics:

> [t]he probation officer is responsible for gathering all pertinent facts about the defendant and the offense, *verifying the information gathered*, interpreting and evaluating the data, applying the facts to the advisory guidelines and statutes, and presenting the information in an organized, objective report.

PSR Manual at II-1 (emphasis added).

Regarding military service, far from stating that the probation officer must take the defendant's word for it, the PSR Manual states that the probation officer should review the defendant's DD Form 214 to verify the information relevant to the defendant's service. *Id.* at II-11.

To corroborate information given to him, the probation officer generally conducts a home visit; interviews third parties who know the defendant; collects documentation of alleged facts; investigates the underlying offense by examining the case file; interviews victims for victim impact statements; gathers information regarding all prior convictions; and may even interview witnesses to the crime, federal agents, and state or municipal police. *Id.* at II-15 to II-27.

In the event the probation officer cannot corroborate information given to him by the defendant, but believes it to be credible, then the probation officer must say the information could not be verified in the PSR. PSR Manual III-1 to III-3.

If the probation officer doubts the veracity of such information, he can either: (1) report that the defendant relayed information regarding his military service, education level, etc., but that the probation officer has not included such information in the PSR because it does not have "sufficient indicia of reliability", or (2) include the defendant's statements, and add in the probation officer's own reasons why he does not think the information is reliable. What the probation officer cannot do is parrot the defendant's statements without comment, unless the probation officer "believes to be accurate" what the defendant has stated. PSR Manual III-1.

Given that the information is made available to both parties 35 days before sentencing, the defendant has plenty of opportunity to object to either the omission of the defendant's statements, or to the probation officer's comments. Fed. R. Crim. P. 32(e)(2), (f). At the sentencing hearing, the defendant has an opportunity to tell the judge any information he thinks the judge should consider that the probation officer left out of the PSR, but that information will not have the imprimatur of the probation officer's investigation.

Here, it is understandable that the probation officer determined Horvath's statement was reliable, because Horvath provided the probation officer with specific information such as rank, title, and base camp. *Horvath*, 492 F.3d at 1076. Horvath had a set of "dog tags" with his name on them. *Id.* Horvath's father told the probation officer the same lie. *Id.* Based on all of this bogus information, the probation officer chose to include the information about the Marines in the PSR because he found it reliable, although unverified.[4]

---

[4]The probation officer in this case is not at fault for failing to uncover Horvath's fraud before sentencing. He did what he was supposed to do. He requested corroborating documentation from the Armed Services; the information simply arrived too late. No, I do not fault the probation officer. I fault Horvath.

Even if Judge Graber is correct and the probation officer must relate all the defendant's statements to the judge, he is still not a conduit regarding those statements because he will also investigate their veracity and relate his findings, which may contradict the defendant's statements. Unlike the probation officer, the court reporter can neither add to or comment on the defendant's statements. This shows the basic difference between an investigator (the probation officer) and a conduit (the court reporter).

Because the trial judge does not act as an independent investigator, he must be able to rely on the probation officer's ability to collect accurate information. Equating lying to a probation officer with lying to a judge overlooks the differences in the roles of each person. A judge evaluates the information given to him in court without further investigation and makes a sentencing determination. He does not conduct his own investigation; he does not interview witnesses outside of court; he does not independently verify information given to him. Instead, he must rely on the probation officer to investigate and verify information.

## IV.   The majority's holding encourages defendants to lie during the presentence investigation.

The PSR is especially important in cases such as this one, where the defendant pleaded guilty and no details of the crime came out at trial. There are no adequate alternatives to 18 U.S.C. § 1001(a), under which the government can hold accountable those defendants who lie to probation officers during the presentence investigation. A defendant is not under oath when he speaks to a probation officer, thus the perjury statute does not apply. *See* 18 U.S.C. § 1621. The courts need 18 U.S.C. § 1001(a) to keep criminal defendants and their attorneys from lying to probation officers, and other federal officers such as FBI agents.

The majority obviously thinks the Sentencing Guidelines sufficiently discourage defendants from lying, rendering lia-

bility under 18 U.S.C. § 1001(a) unnecessary. We know this is not true. If it were, Horvath never would have concocted his elaborate story of serving on behalf of our country with valor—right down to the fake dog tags and the beguiling tale of his fake Purple Heart. Under U.S.S.G. § 3C1.1, a defendant's sentence can be enhanced by two levels if his lie is discovered prior to sentencing. Though § 3C1.1 may act as a deterrent, this case demonstrates the difficulty a probation officer may have in verifying the information given by the defendant prior to sentencing. Here, the probation officer attempted to get the Marines to verify Horvath's service, but did not receive the information proving Horvath was a fraud until after Horvath's sentencing hearing.

The majority purports to limit its holding by explaining that a defendant cannot be prosecuted under § 1001(a) when he lies to a probation officer about information that is material. *Horvath*, 492 F.3d at 1076. The majority finds Horvath's tale about the Marines was material because the government argued it was material misinformation and therefore prohibited under 18 U.S.C. § 1001(a). This finding implies that any statement made to a probation officer, for which one could be prosecuted under § 1001(a), is also immune under § 1001(b), because the information is material. In other words, the majority does not limit its holding at all.

A sentencing judge, charged with the duty of determining the defendant's appropriate sentence, must be able to rely upon the information contained in the PSR. To maintain the integrity of the PSR and the sentencing system, defendants who lie to and manipulate probation officers must be held accountable. Stretching the protection of § 1001(b) to defendants such as Horvath contravenes this purpose.

For these reasons, I respectfully dissent from the denial of rehearing en banc.

KOZINSKI, Chief Judge, with whom Judges KLEINFELD and TALLMAN join, dissenting from the order denying the petition for rehearing en banc:

I join Judge Bea's well-reasoned dissent. I write separately, however, because I don't see the point of Judge Graber's special concurrence. Judge Graber makes her stand on the claim that probation officers must always, and without exception, report defendants' false statements to the district court. Graber Concurrence at 3684. I think Judge Bea has the better of this argument, *see* Bea Dissent at 3690-93, but let's pretend Judge Graber is right: So what? The probation officer, after all, has *other* duties. He's not like a court reporter whose only responsibility is to take down what people say and transmit it verbatim. The probation officer *also* has the independent duty to figure out the truth and so advise the court. *See* Bea Dissent at 3693-98. The probation officer is therefore not simply an extension of the court, even if he's required to report all of defendant's false statements, as Judge Graber maintains. The probation officer has a separate role to play as an investigator and truth-finder.

Section 1001 is designed to protect precisely this investigative function. If probation officers can't count on being told the truth, this will increase the work they must do to ensure that the court gets accurate information. And not just with the few who lie, but also with the many who tell the truth, because the probation officer can't be sure which is which. As we explained almost fifty years ago, section 1001 protects government agencies "from the perversions which might result from the deceptive practices proscribed." *Pitts* v. *United States*, 263 F.2d 353, 358 (9th Cir. 1959). The threat of section 1001 liability helps government agencies rely on the accuracy of statements made to them. Indeed, section 1001 "serve[s] the vital public purpose of protecting governmental functions from frustration and distortion through deceptive practices." *Ogden* v. *United States*, 303 F.2d 724, 742 (9th

Cir. 1962). This keeps agencies from wasting scarce resources in chasing down the truth.

I can see no reason—and the panel offers none—why we should treat a probation officer differently from any other federal agent. We have applied section 1001 to a whole host of federal agencies, such as the Federal Housing Administration, *Preuit* v. *United States*, 382 F.2d 277, 277-78 (9th Cir. 1967), and the Atomic Energy Commission, *Pitts*, 263 F.2d at 354. That a probation officer reports to a judge rather than an executive branch official doesn't make any difference, because the probation officer (just like other investigating government agents) has an independent duty to determine the truth. If the statute expressly exempted statements made to probation officers—as it exempts statements made to judges and magistrates, 18 U.S.C. § 1001(b)—we would have a different situation. But it doesn't, so the case turns on whether the probation officer is merely a proxy for the judge or magistrate. Since the probation officer clearly has an independent role to play, quite aside from any function he may serve as the conduit to a judicial officer, the whole controversy about whether he is a proxy is entirely beside the point. Thus, even if Judge Graber were right in what she says in her concurrence, it would fall short of justifying the panel's result, just as the panel's opinion itself falls far short.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO
————————

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson/West.