FILED
United States Court of Appeals
Tenth Circuit

May 16, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

PATRICK MANNING, JR.,

    Defendant-Appellee.

No. 07-5035

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 07-CR-13-C)**

---

Kevin R. Gingras, Criminal Division, Appellate Section, United States
Department of Justice, Washington, D.C. (with David C. O'Meilia, United States
Attorney, and Shannon L. Henson, Assistant United States Attorney, Northern
District of Oklahoma), for Plaintiff-Appellant.

Martin G. Hart, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **HENRY**, Chief Judge, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

**HENRY**, Chief Judge.

After he pleaded guilty to misappropriating funds as a fiduciary, the district court sentenced Mr. Manning to 37 months' imprisonment and ordered restitution in the amount of $26,437.34. About three years later, the government determined that Mr. Manning failed to include his $40,000 401(k) retirement account in his statement of net worth, which the probation officer had used to prepare the presentence report (PSR) for the misappropriation conviction. As a result, the probation officer did not include this amount in his suggested calculation of the restitution award.

The government prosecuted Mr. Manning for making a false statement under 18 U.S.C. § 1001. However, the district court determined that the "judicial function" exception in § 1001 applied to Mr. Manning's false statement, because he made the statement in an adjudicative proceeding. Therefore, the district court dismissed the indictment. The government now appeals, arguing that the district court misapplied the judicial function exception. We agree, and reverse and remand.

## I. BACKGROUND

This appeal arises from the government's prosecution of Mr. Manning for one count of knowingly and willfully making a materially false, fictitious, or fraudulent statement or representation, in violation of 18 U.S.C. § 1001. The government maintains that on August 21, 2003, before he was sentenced for his conviction of misappropriation by a fiduciary under 38 U.S.C. § 6101(a), Mr.

Manning gave a false statement to United States Probation Officer Tony Budzinsky, who was preparing the PSR. To determine the appropriate fine and restitution for the misappropriation conviction, Probation Officer Budzinsky inquired as to Mr. Manning's net worth. In response, Mr. Manning failed to disclose his 401(k) retirement plan, which was worth approximately $40,000.

Probation Officer Budzinsky prepared a Net Worth Statement based on Mr. Manning's representations, and subsequently prepared the PSR, relying on the Net Worth Statement. On January 16, 2004, the district court sentenced Mr. Manning to 37 months' imprisonment and 36 months' supervised release. The court did not assess a fine, but it did impose a $100 assessment, and it ordered restitution in the amount of $26,437.34.

The government discovered the omission of the $40,000 401(k) plan a few years after Mr. Manning's sentencing. It then convened a federal grand jury, which indicted Mr. Manning on one count of making a materially false, fictitious, or fraudulent statement and representation "in a matter within the jurisdiction of the judicial branch of the United States," in violation of 18 U.S.C. 1001.[1] Aplt's

---

[1] To establish a conviction under § 1001(a)(2), our precedent requires that the government prove that:

(1) the defendant made a statement;
(2) the statement was false, fictitious or fraudulent as the defendant knew;
(3) the statement was made knowingly and willfully;
(4) the statement was within the jurisdiction of the [judicial branch]; and
(5) the statement was material.

App. at 6. Before trial, the district court ordered the parties to address "whether the 'judicial proceeding exception' provision in 18 U.S.C. § 1001(b) is applicable to this case and whether said provision would invalidate the Indictment issued herein." Aplt's App. doc. 30, at 13.

At a hearing, the district court concluded that the "judicial proceeding exception" did apply because Mr. Manning made the statement to the probation officer when the probation officer was acting in a "judicial" rather than an "administrative" capacity:

> Recognizing that there are no cases that I have been able to find that deal with the Section B exemption to the 1001-A violations, and recognizing that it seems clear that the intent of the legislation by the Congress was to prevent any chilling effect of the advocacy nature of judicial proceedings and therefore to distinguish between judicial and administrative proceedings, judicial proceedings falling within the exemption of Subsection B and administrative proceedings not falling into it, the Court is of the opinion that this is an adjudicative proceeding[], it is a matter which the probation office through legislative authority and direction, is working [o]n behalf of the Court gathering information for the presentence report. It is not an administrative proceeding[]. . . .
> [T]herefore the Court is of the opinion that the exemption is applicable to the factual circumstances as has been presented to the Court in this case.

Aplt's App. at 46-47. Having found that § 1001(b) applied, the district court dismissed the indictment.

The government now appeals, arguing that § 1001(b) does not exempt false

---

*United States v. Kingston*, 971 F.2d 481, 483 (10th Cir. 1992).

statements such as Mr. Manning's. We agree that the statute does not insulate Mr. Manning's omission, and we therefore reverse and remand.

## II. DISCUSSION

The government first argues that § 1001(b)'s plain language does not exempt Mr. Manning's wrongful statement to Probation Officer Budzinsky because the judicial function exception is inapplicable in this case. Second, the government argues that, should this court decide to review § 1001's legislative history, it is evident that Probation Officer Budzinsky acted in an administrative capacity that did not fall under § 1001(b)'s exception. Third and, in conjunction with its second argument, the government asserts that a probation officer's role is an administrative one, and thus § 1001(b) cannot apply to Mr. Manning's statements. We agree with the government that the plain language of § 1001(b) does not apply to Mr. Manning's false statement and that the legislative history does not support an exemption for his false statement to a probation officer in this context.

### A. Standard of review

We review a district court's statutory interpretation de novo. *United States v. Rx Depot, Inc.*, 438 F.3d 1052, 1054 (10th Cir. 2006). "It is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction." *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000) (internal quotation marks omitted). We begin by examining the

statute's plain language. *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991). If the statutory language is clear, our analysis ordinarily ends. *Id; see also Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) ("It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls."). If the statute's plain language is ambiguous as to Congressional intent, "we look to the legislative history and the underlying public policy of the statute." *United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999).

**B. The False Statements Act**

We begin with the False Statements Act's plain language. Section 1001 reads in pertinent part:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) *makes any materially false, fictitious, or fraudulent statement* or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. . . .

(b) Subsection (a) *does not apply to a party to a judicial proceeding*, or that party's counsel, for statements, representations, *writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.*

18 U.S.C. § 1001(a)-(b) (emphasis added). Subsection (b) indisputedly creates exceptions for statements by parties and counsel in judicial proceedings. The exception set forth in § 1001(b) is commonly called the "'judicial function' exception." *See United States v. Deffenbaugh Indus.,* 957 F.2d 749, 752 (10th Cir. 1992) ("Most circuits have recognized a 'judicial function' exception to the application of § 1001 . . . .").

Since the statute's amendment in 1996, we have not had occasion to comment upon the breadth of the judicial function exception. Beginning with the plain language of the statute, there is no debate that Mr. Manning was a party to a judicial proceeding and that he made a statement during that proceeding. The question is whether Mr. Manning's failure to mention to Probation Officer Budzinsky the existence of the 401(k) account, which in turn Probation Officer Budzinsky omitted from the PSR submitted to the court, was a false statement "submitted . . . to a judge." 18 U.S.C. § 1001(b).

Clearly, if we read § 1001(b) strictly and literally ("to a *judge*"), then the false statement, which was contained in the PSR, would not be covered by the judicial function exception. However, the government acknowledges (and we appreciate the government's candor in so doing), that § 1001(b)'s exception *must*

cover certain *agents* of a judge – such as a judge's secretary or law clerk. Similarly covered might be the judge's courtroom deputy clerk or bailiff, because clerical staff act as conduits to the judge.

Because the plain language of § 1001(b) leaves some doubt as to the scope of a judicial agency, we look beyond the statute's plain language and consider (1) how the judicial function exception developed; (2) the statute's legislative history; (3) the role of the probation officer in formulating the PSR; and finally (4) how Mr. Manning's false statement fares against this backdrop.

1. History of the judicial function exception

Standing alone, the idea of exonerating someone for making a false statement to a judge seems incongruous. However, the exception developed out of a concern that the statute might be interpreted to "criminalize conduct that f[ell] well within the bounds of responsible advocacy." Julie R. O'Sullivan, *The Federal Criminal "Code" Is a Disgrace: Obstruction Statutes as Case Study*, 96 J. CRIM. L. & CRIMINOLOGY 643, 709 (2006). Moreover, an "extensive array" of other statutes "already exist[s] to penalize false statements within the Judicial Branch." *Hubbard v. United States*, 514 U.S. 695, 714 (1995) (listing 18 U.S.C. § 1621 (perjury); § 1623 (false declarations before grand jury or court); § 1503 (obstruction of justice); § 287 (false claims against the United States)).[2]

_____

[2] We must acknowledge some confusion as to why the government did not seek to prosecute Mr. Manning under another statute such as § 1503, obstruction of justice. This statute is designed in part "to prevent miscarriages of justice by

-8-

a. *United States v. Bramblett*, 349 U.S. 503 (1955)

Section 1001 as it stood in 1934 encompassed the concealing or covering

up of a material fact, which led courts to question whether it could

constitutionally apply when a defendant pleaded not guilty or when counsel

moved to exclude hearsay testimony known to be true.[3]  *See* O'Sullivan, 96 J.

CRIM. L. & CRIMINOLOGY at 709.  In *Bramblett,*

> a former Member of Congress was charged under § 1001 for falsely
> representing to the House Disbursing Office that a named person was
> entitled to compensation as his official clerk.  The district court had
> granted [Mr.] Bramblett's motion for arrest of judgment following his
> conviction on the ground that he had not falsified a material fact
> "within the jurisdiction of any department or agency of the United
> States" because the Disbursing Office was not a department or agency
> within the meaning of § 1001.

*United States v. Oakar*, 111 F.3d 146, 151 (D.C. Cir. 1997) (explaining

*Bramblett*); *see also Morgan v. United States*, 309 F.2d 234, 237 (D.C. Cir. 1962)

(also explaining *Bramblett*).  The Supreme Court rejected the argument that §

1001 only penalizes false statements made within the jurisdiction of executive

corrupt methods," which seems particularly apt here.  *United States v. Williams*,
874 F.2d 968, 976 (5th Cir. 1989) (internal quotation marks omitted).

[3]  Indeed, the Supreme Court has noted that "[s]ince 1934, the statute, the
relevant part of which remains the same today, has prohibited the making of 'any
false or fraudulent statements or representations . . . in any matter within the
jurisdiction of any department or agency of the United States or of any
corporation in which the United States of America is a stockholder.'"  *Brogan v.
United States*, 522 U.S. 398, 413 (1998) (quoting Act of June 18, 1934, ch. 587, §
35, 48 Stat. 996).

agencies. The Court, held that "department," as used in § 1001, "was meant to describe the executive, legislative and *judicial* branches of the Government." *Bramblett*, 348 U.S. at 509 (emphasis added).

"In the wake of *Bramblett*, federal courts carved out the 'judicial function' exception to § 1001, under which § 1001 was found 'not [to] apply to statements made to a court acting in its judicial capacity.'" *United States v. Tracy*, 108 F.3d 473, 476 (2d Cir. 1997) (quoting *United States v. Masterpol*, 940 F.2d 760, 766 (2d Cir. 1991)); *see also Deffenbaugh Indus.*, 957 F.2d at 752; *United States v. Holmes*, 840 F.2d 246, 248 (4th Cir. 1988); *United States v. Mayer*, 775 F.2d 1387, 1388-92 (9th Cir. 1985) (per curiam); *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir. 1979); *Morgan*, 309 F.2d at 237. "This judicially-crafted exception provided that if a false statement or concealment concerned a court's 'judicial function' it was not actionable under § 1001; if, however, the conduct was addressed only to the administrative functions of the court, it was actionable." O'Sullivan, 96 J. CRIM. L. & CRIMINOLOGY at 709.

b. *Hubbard v. United States*, 514 U.S. 695 (1995)

The existence of the judicial function exception remained untested until 1995, when the Supreme Court decided *Hubbard v. United States*. "In *Hubbard*, the Court held that the judicial branch is not a 'department' under § 1001; in so doing, it overruled [*Bramblett*,], where, applying § 1001 to the legislative branch, the Court had broadly interpreted 'department' to describe the 'executive,

legislative, and judicial branches of the Government.'" *United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998) (internal citations omitted); *see also Hubbard*, 514 U.S. at 702 (explaining that *Bramblett* itself "must be acknowledged as a seriously flawed decision"). Addressing the majority's holding that § 1001 did not apply to the judicial branch, Justice Scalia's concurrence warned that there "remains . . . a serious concern that the *threat* of criminal prosecution under the capacious provisions of § 1001 will deter vigorous representation of opposing interests in adversarial litigation, particularly representation of criminal defendants, whose adversaries control the machinery of § 1001 prosecution." *Hubbard,* 514 U.S. at 717 (Scalia, J., concurring) (emphasis in original). It was in the wake of *Hubbard* that Congress decided to amend § 1001.

2. Legislative history behind the 1996 amendment

In May, 1995, Congressman Martini introduced H.R. 1678, which applied section 1001 to all three branches of the Federal Government, without exception. At a Crime Subcommittee hearing on June 30, 1995, witnesses expressed concern that the broad application of section 1001 to all three branches would *chill advocacy in judicial proceedings* and also undermine the fact-gathering process that is indispensable to the legislative process. In response to these concerns, Representative Martini introduced H.R. 3166 on March 27, 1996, which included a *judicial function exception, exempting from the scope of section 1001 those representations made by a party or party's counsel to a judge during a judicial proceeding. . . .*

H.R. 3166 applies section 1001 to all three branches of the U.S. Government, with *two exceptions. First, the bill does not apply section 1001 "to a party to a judicial proceeding, or that party's counsel, for*

-11-

*statements, representations, writings or documents submitted by such party or counsel to a judge in that proceeding." Such an exception is intended to codify the judicial function exception which has long been recognized by many Federal courts as necessary to safeguard from the threat of prosecution statements made in the course of adversarial litigation. Allowing the criminal penalties of section 1001 to apply to statements made in the course of adversarial litigation would chill vigorous advocacy*, thereby undermining the adversarial process. The exception is consistent with the Court's reasoning in [*United States v. Bramblett*, 348 U.S. 503 (1955)], and [*Morgan v. United States*, 309 F.2d 234 (D.C. Cir. 1962)], and subsequent case law, which consistently distinguished the *adjudicative from the administrative functions* of the court, exempting from section 1001 only those communications made to the court when it is acting in its adjudicative or judicial capacity, and leaving subject to section 1001 those representations made to the court when it is functioning in its administrative capacity. Thus, false statements uttered during the course of court proceedings or contained in court pleadings would not be covered by section 1001. *The language of the exception recognizes that a wide range of filings are an integral part of the adversarial process, and therefore goes beyond merely exempting "statements," exempting as well "representations, writings or documents" submitted to the judge.* Importantly, such filings made in judicial proceedings *are already covered by other statutes*, further limiting any supposed necessity of covering these filings with section 1001.

H. Rep. 104-680, 104th Cong., 2nd Sess. 1996, 1996 U.S.C.C.A.N. 3935, 3937-38 (footnotes omitted) (emphasis added).

As to the judicial function exception, the House Report continued:

[S]ubsection (b) provides that section 1001 does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge in that proceeding. As such, section 1001 does not apply to representations made to a court that is acting in its judicial, or adjudicatory capacity; *Rather, it applies only to representations made to a court acting in its administrative capacity.* . . . The judicial function exception provided in subsection (b) is intended to codify the judicial function exception as articulated in *Bramblett*. Consequently,

consistent with *Bramblett*, *only those representations made to a court when it is acting in its administrative or "housekeeping" capacity are within the scope of section 1001*. Such representations would include any filings *not related to a proceeding before the court*, such as submissions related to bar membership, and *would also include the submission of information to another entity within the judicial branch, such as the probation service*.

*Id.* at 3942-43 (emphasis added).

The 1996 amendment thus sought to reinstate the judicial function exception as it existed pre-*Hubbard*. In addition, Congress intended the exception *not* to encompass "submissions of information to . . . the probation service." *Id.* at 3943. Having concluded the judicial function exception is extant – indeed, codified – and has Congressionally delineated parameters, we consider its application to the case at hand: Was Officer Budzinsky's preparation of the PSR and presentation of the PSR, containing Mr. Manning's statements, equivalent to a party's statement to a judge? To answer this, we consider the role of Probation Officer Budzinsky.

3. Role of the probation officer

In fashioning a restitution order, the court is required to "order the probation officer to obtain and include in" the PSR "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). *United States v. Serawop*, 505 F.3d 1112, 1118 (10th Cir. 2007) (applying 18 U.S.C. § 3664(a)); *see also* 18 U.S.C. § 3663 (Victim and Witness Protection Act).

As amended by the Sentencing Reform Act, Federal Rule of Criminal Procedure 32 provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence. Rule 32 frames these issues by directing the probation officer to prepare a presentence report addressing all matters germane to the defendant's sentence.

*Burns v. United States*, 501 U.S. 129, 134 (1991) (citation omitted).

Pursuant to Rule 32(c)(2), the PSR is to contain (a) information about the history and characteristics of the defendant, including his prior criminal record; (b) the classification of the offense and the defendant under the Sentencing Guidelines, possible sentencing ranges, and any factors that might warrant departure from the Guidelines; (c) any pertinent policy statements issued by the Sentencing Commission; (d) the impact of the defendant's offense upon any victims; (e) information relating to possible sentences not requiring incarceration, unless the court orders otherwise; and (f) any other information requested by the court. *See id.*; FED. R. CRIM. P. 32.

When preparing a PSR under Rule 32, "it is evident . . . that the probation service is an arm of the court. It is not an investigative arm for the prosecution. A presentence report is prepared exclusively at the discretion of and for the benefit of the court." *United States v. Dingle*, 546 F.2d 1378, 1380-81 (10th Cir. 1976). "The purpose of the presentence report, including associated interviews, is neither prosecutorial nor punitive. It is essentially neutral in those respects. The probation officer acts as an *agent* of the court for the purpose of gathering and

classifying information and informing the court in the exercise of its sentencing responsibility." *United States v. Rogers*, 921 F.2d 975, 979-80 (10th Cir. 1990) (emphasis added). Although the probation officer acts as the court's agent, it seems the role is certainly more substantive than that of a message bearer; indeed, probation officers can exercise some discretion on their own.

There is little doubt that Probation Officer Budzinsky performed his duties as required by the district court pursuant to Rule 32. He filtered all the information he received from his investigation and prepared the Net Worth Statement and finally the PSR, which was subjected to adversarial testing by the parties. *See* FED. R. CRIM. P. 32(i)(1)(c) (mandating that the parties be given an opportunity "to comment on the probation officer's determinations and on other matters relating to an appropriate sentence"); *Burns*, 501 U.S. at 135. Only after such testing does the court exercise its discretion and fashion a restitution order.

Given this background and the statute's legislative history, we are informed in our analysis by a divided Ninth Circuit decision, which recently immunized a similar false statement to a probation officer. *See United States v. Horvath*, 492 F.3d 1075 (9th Cir. 2007), *reh'g en banc denied*, __ F.3d __ , 2008 WL 943951, at *4 (Apr. 9. 2008) ("The worst aspect is in the majority deciding that we should be the entity to grant immunity under 18 U.S.C. § 1001(b), where Congress did not see fit to grant such immunity. If Congress had wanted to exempt statements made by a defendant to a probation officer, then Congress knew how to do it.")

(Bea, J., dissenting from denial of reh'g en banc). Mr. Horvath made a false statement (that he had served in the United States Marine Corps) to the probation officer during the presentence interview. The probation officer included this statement in the PSR, and the court ultimately relied on Mr. Horvath's purported military service as a mitigating factor during the imposition of his sentence. The panel majority determined that § 1001(b)'s judicial function exception insulated the statement, because Mr. Horvath's false statement was submitted, via "courier" (i.e. the probation officer) to the district court judge. "[A] defendant does not lose the protection of § 1001(b) simply by using an intermediary." 492 F.3d at 1081.

However, we believe that the dissent's logic and reasoning as to the role of the probation officer in this instance appears to be the better approach, and also squares with Congressional intent. The dissent agreed that documents or writing provided to a judge via a courier or a clerk or secretary, are "submitted" to a judge for purposes of § 1001(b). *Id.* at 1082 (Rymer, J., dissenting). However, Judge Rymer believed, and we agree, that a probation officer, in preparing the PSR pursuant to Rule 32, acts with greater authority than does a "courier pigeon." *Id.* "[T]he probation officer's obligation is to submit a report that contains information *on* the defendant's history and characteristics, not *from* the defendant." *Id.* Here, as in *Horvath*, the probation officer "picked and chose" what to include and exclude in the PSR, "based on his understanding of what is

-16-

expected of him and what he believes is important for the court and the parties to know." *Id.* at 1083. The process involves the probation officer's exercise of his discretion, and not a mere transmission of information. *See Horvath*, 2008 WL 943951, at *9 ("[The probation officer is] not like a court reporter whose only responsibility is to take down what people say and transmit it verbatim. The probation officer also has the independent duty to figure out the truth and so advise the court. The probation officer is therefore not simply an extension of the court, even if he's required to report all of defendant's false statements . . . . The probation officer has a separate role to play as an investigator and truth-finder.") (Kozinksi, C.J., dissenting from denial of reh'g en banc) (citations omitted).

Furthermore, the dissent noted, pre-*Hubbard* case law from the Ninth Circuit supported the determination that certain pre-sentencing misrepresentations are subject to prosecution under § 1001. *See United States v. Gonzalez-Mares,* 752 F.2d 1485 (9th Cir. 1985) (stating that "probation officer's questions regarding the use of aliases and prior convictions were a routine exercise of administrative responsibility" and upholding conviction when false statements to probation officer "impaired the basic functioning of the probation department"); *United States v. Plascencia-Orozco*, 768 F.2d 1074, 1076 (9th Cir. 1985) (upholding a conviction of an individual who orally gave a false name to the magistrate at his arraignment stating "the magistrate's inquiry of [defendant] as to his true identity was not an exercise of the magistrate's judicial powers, but was a

-17-

function of the magistrate's administrative duties"); *see also Barber v. United States*, 881 F.2d 345, 350-51 (7th Cir. 1989) (holding that defendant's mailing of false recommendation letters to U.S. Attorney's Office on behalf of another defendant was covered by § 1001 because facts presented "a unique setting and one ill-suited to regulation through the perjury statutes" and because sentencing recommendations are within jurisdiction of U.S. Attorney's Office); *Masterpol*, 940 F.2d at 766 (holding defendant's "spurious letters of recommendations" submitted to the court to influence sentencing were not covered by § 1001); *Mayer*, 775 F.2d at 1390-92 (adopting exception and finding submission of false letters of recommendation to sentencing judge within court's adjudicative function).

Finally, the *Horvath* dissent persuasively concludes that to hold Mr. Manning's false statement to the probation officer within the ambit of § 1001(a) also supports Congressional intent. Congress did not intend to allow defendants to avoid restitution obligations through lies or misrepresentations made to a probation officer.

> While Congress obviously did intend to allow some false statements, . . . to be made to a judge in the course of adversarial litigation to avoid chilling of advocacy on the margin between pushing the envelope and being misleading and lying, it did not immunize falsehoods altogether even in the judge's arena as it drew a line at knowingly making a false material statement under oath. 18 U.S.C. § 1623. Additionally, the adversary system, counsels' ethical obligations, and other means available to judicial officers kick in to further truth-seeking in the courtroom. Similar balances do not apply in the

> probation officer's arena. Statements to probation officers are not made under penalty of perjury and the process is not adversarial. Absent § 1001, there are scant incentives for truth-speaking.

*Horvath*, 492 F.3d at 1083 (Rymer, J., dissenting). Indeed, the procedure for the issuance of a restitution order indicates that Congress intends to include *all* of a defendant's assets in a restitution calculation. *See* 18 U.S.C. § 3664(d)(3) ("Each defendant shall prepare and file with the probation officer an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets owned or controlled by the defendant . . . , the financial needs and earning ability of the defendant and the defendant's dependents, and such other information that the court requires relating to such other factors as the court deems appropriate."). Congress did not intend to excuse Mr. Manning for omitting financial assets from his statement to Probation Officer Budzinsky. *Horvath*, 2008 WL 943951, at *8 (observing that to hold otherwise "encourages defendants to lie during the presentence investigation") (Bea, J., dissenting from denial of reh'g en banc).

This is a close and difficult case. While some aspects of the probation officer's actions seem to be those of an agent, other functions allow discretion. Yet we cannot hold that Congressional intent encompassed allowing a defendant to conceal resources when such evidence is critical to the final judicial decision, at which time the advocates can have their say protected by § 1001(b). Thus, although it seems the government could have chosen another route, it was fully

-19-

empowered to prosecute Mr. Manning under § 1001.

## III. CONCLUSION

Mr. Manning's statement to the probation officer that omitted mention of his $40,000 401(k) retirement account is a prosecutable offense under 18 U.S.C. § 1001(a) and is not excepted under the judicial function exception of § 1001(b). Accordingly, we **VACATE** and **REMAND** for trial.

07-5035, *United States v. Manning*

**GORSUCH**, Circuit Judge, concurring.

I am pleased to join Chief Judge Henry's thoughtful opinion and write only to add a couple observations about the statute's plain language. When he presented his net worth statement to the probation officer in this case, Mr. Manning did something more than submit his false statement to a judge; he also made a false statement, in a matter within the jurisdiction of the judicial branch, to a probation officer (not a judge or magistrate) for that officer's use and consideration. Under the plain and unambiguous terms Congress chose to employ in 18 U.S.C. § 1001(a) & (b), this is a crime.

* * *

1. The question before us involves the interplay between two subsections of 18 U.S.C. § 1001. Subsection (a) makes it illegal to lie or conceal material facts "knowingly and willfully" in "*any matter* within the jurisdiction of the executive, legislative, *or judicial branch* of the Government of the United States." (emphases added). The breadth of subsection (a) is well known and often remarked upon. *See, e.g.*, *United States v. Rodgers*, 466 U.S. 475, 479 (1984) (noting the "sweeping language Congress enacted" in 18 U.S.C. § 1001). There is, however, an exception pertinent for our purposes provided by subsection (b): criminal liability does not attach to "statements, representations, writings or documents submitted by [a party to a judicial proceeding] or counsel to a judge or

magistrate in that proceeding." 18 U.S.C. § 1001(b).[1] Reading these two

provisions together, we can deduce a couple things about Congress's intentions.

First, Congress was well aware that statements submitted to judges and

magistrates are not coextensive with (but rather a subset of) the total universe of

statements made in matters within the jurisdiction of the judicial branch. Second,

Congress intended for criminal liability to attach generally to those statements

made in matters within the jurisdiction of the judicial branch, excepting only

those false statements submitted to a judge or magistrate. That Congress did not

intend that *all* false statements made in judicial matters be free from prosecution

under Section 1001 is evidenced by its inclusion of the judicial branch in

subsection (a) and the narrow and specific language ("submitted . . . to a judge or

magistrate") it employed in subsection (b)'s exception.

In this case, it is undisputed that Mr. Manning gave his misleading

statement of net worth to a probation officer. That would seem, on its face, to

make him susceptible to criminal prosecution under subsection (a). Sentencing,

after all, is a matter within the jurisdiction of the judicial branch, and Mr.

Manning made a false representation in that matter. Mr. Manning contends he is

immune from prosecution, however, because the information in his statement to

the probation officer eventually made its way, or should have made its way, to the

---

[1] There are, of course, additional limitations for frauds and false statements made within the jurisdiction of the legislative branch. *See* 18 U.S.C. § 1001(c).

judge in his case.  This misconceives the nature of the statutory test.  Even if we assume that the probation officer had no choice other than to submit a verbatim report of the defendant's response directly to the judge, the plain language of subsections (a) and (b) does not close the door to prosecution for making the same false statements to someone operating within the jurisdiction of the judicial branch, other than a judge or magistrate in the course of a judicial proceeding. Put another way, subsection (b) protects only statements submitted to a judge or magistrate; it does not protect flogging (even the same) false statements to others in the government, whether in the judiciary or other branches.

For example, suppose Mr. Manning was criminally accused of misappropriation by a fiduciary and was being independently pursued by the Internal Revenue Service ("IRS") for the payment of back taxes.  We wouldn't presume for a minute that he could avoid prosecution for providing the IRS with false information simply because he or the IRS forwarded those documents to the judge in his criminal proceeding.  This would be the case even if Mr. Manning knew with absolute certainty that the IRS would supply the court with his false documentation.  I see no reason in the text of the statute to justify a different result in our case.

2.  That a prosecutable offense took place here is further underscored by the plain meaning of the subsection (b)'s term.  Congress excepted from prosecution only items "submitted . . . to a judge or magistrate."  The term "to

-3-

submit" means to "send or commit for consideration, study, or decision." Webster's Third New International Dictionary 2277 (2002).[2]  To submit a document to a judge, then, is to "send or commit [it] for [his or her] consideration, study, or decision."

To be sure, one might well say that a document delivered to the judge in care of a docketing clerk or administrative assistant is *only* "submitted . . . to a judge" and thus not susceptible to prosecution.  After all, our rules often prescribe the use of such intermediaries when sending documents to a judge.  *See, e.g.*, Fed. R. Crim. P. 49(d) (requiring papers to be filed in the manner provided for in a civil action); Fed. R. Civ. P. 5(d)(2) ("A paper is filed by delivering it . . . to the clerk."); *accord United States v. Horvath*, 492 F.3d 1075, 1082 (9th Cir. 2007) (Rymer, J., dissenting) ("[T]he judge would receive these things personally if only he or she had enough time and arms.").[3]

---

[2]  *See also* 17 Oxford English Dictionary 46 (2d ed. 1989) (defining the term to submit as meaning, in this sense, "[t]o bring under a person's view, notice, or consideration; to refer *to* the decision or judgement of a person; to bring up or present *for* criticism, consideration, or approval.").

[3]  The fact that the defendant must also submit service copies to opposing counsel is likewise part of the process of submitting materials to a judge, *see, e.g.*, Fed. R. Crim. P. 49(a) (requiring service of all motions or similar papers to every other party), and thus the government cannot of course prosecute false statements it receives by that means.  The falsity presented to the prosecutor in such instance, like filing motions with the clerk, cannot be uncoupled from the protected submission to the judge; copies of the documents are served on the prosecutor only by virtue of, and as part of, their submission to a judge.

But a probation officer is no mere judicial delivery service. By rule, probation officers are assigned responsibility for calculating a recommended Guidelines range, *see* Fed. R. Crim. P. 32(d)(1)(C), compiling information sufficient to determine an appropriate restitution amount, *see* Fed. R. Crim. P. 32(c)(1)(B) & (d)(2)(D), and making other sentencing recommendations to the judge, *see, e.g.*, Fed. R. Crim. P. 32(d)(1)(E) & (d)(2)(C)-(F). By statute, Congress has recognized all this: "A United States probation officer shall make a presentence investigation of a defendant that is required pursuant to the provisions of Rule 32(c) of the Federal Rules of Criminal Procedure, and shall, before the imposition of sentence, report the results of the investigation to the court." 18 U.S.C. § 3552(a). As the Administrative Office has summarized, the probation officer "is responsible for *gathering* all pertinent facts about the defendant and the offense, *verifying* the information gathered, *interpreting and evaluating* the data, *applying* the facts to the advisory guidelines and statutes, and presenting the information in an organized, objective report." Administrative Office of the United States Courts, Office of Probation and Pretrial Services, *The Presentence Investigation Report* at II-1 (rev. March 2006) (emphases added).

So, when a defendant presents information to the probation officer, he or she does not merely (only) send it to the judge or commit it to a judge's consideration. Rather, the defendant also presents the statement for the *probation officer's* use, consideration, and study. In this way, something *more* than a mere

"submission to a judge" takes place. Indeed, in light of the probation officer's role as fact-gatherer, information-verifier, data-interpreter, guidelines-applier, and sentence-recommender, Mr. Manning's false statement was, in a very real way, "submitted" to the probation officer (even if, perhaps, also to the judge) for his consideration and study. As Judge Rymer has explained, "while a defendant's statements to a probation officer may indirectly be for the judge's consumption, they are directly 'to' the probation officer and *directly influence the probation officer's sentencing recommendations*." *United States v. Horvath*, 492 F.3d 1075, 1083 (9th Cir. 2007) (Rymer, J., dissenting) (emphasis added); *see also United States v. Horvath*, --- F.3d ---, 2008 WL 943951, at *10 (9th Cir. 2008) (Kozinski, J., dissenting from denial of rehearing *en banc*) ("Since the probation officer clearly has an independent role to play, quite aside from any function he may serve as the conduit to a judicial officer, the whole controversy about whether he is a proxy is entirely beside the point."). Because more than a "submi[ssion] . . . to a judge" took place, Mr. Manning's activities fall outside the protected, but limited, scope of subsection (b), making him susceptible to prosecution under subsection (a).

3. Though I have so far assumed, for the sake of argument, that the probation officer is required to pass along to the judge in an unadulterated form each and every thing the defendant may choose to hand over – *i.e.*, that a statement given to a probation officer can *also* be considered submitted to a judge

-6-

– as Chief Judge Henry points out, this is not the case. Slip Op. Part II.B.3; *see also Horvath*, 2008 WL 943951, at *4-6 (Bea, J., dissenting from denial of rehearing *en banc*). This fact, in turn, further confirms the probation officer's statutory role at sentencing and serves to underscore that something more than a protected "submi[ssion] . . . to a judge" took place here.

While there is much, of course, that the probation officer *must* include in a PSR, *see* Fed. R. Crim. P. 32(d)(1)-(2), this is not necessarily the whole universe of information that a defendant might discuss with or provide to a probation officer during a presentence interview. There is always the possibility that the pair will discuss other things and, thus, that scraps will be left on the cutting room floor because their inclusion in a PSR is not mandatory.

Further, Rule 32's commands about the contents of a PSR speak only in terms of what *information* – that is, underlying facts – must be included; the rule nowhere requires the probation officer to include defendant's actual writings or statements. A probation officer is thus more private investigator than postal service, and his or her role is not to transmit documents but to "*evaluate[] the sentencing information presented* by the respective parties . . . ." Daniel J. Sears, *Practice Under the Federal Sentencing Guidelines: Bargaining for Freedom*, 22 Colo. Law. 485, 489 (1993) (emphasis added); *see also Horvath*, 492 F.3d at 1082 (Rymer, J., dissenting) ("[T]he probation officer's obligation is to submit a report

that contains information *on* the defendant's history and characteristics, not *from* the defendant.").

Even with respect to the information that must be included in the PSR, moreover, there is still ample room for discretion. For example, when restitution is at issue, the PSR must contain "information *sufficient* for a restitution order." Fed. R. Crim. P. 32(d)(2)(D) (emphasis added); Slip Op. at 13. But how does a probation officer know what information is sufficient? Why does the PSR include the information culled from bank records that defendant has $5,000 in savings, but not that defendant's daughter has a piggy bank on her dresser? Because the probation officer exercises a degree of discretion. Likewise, while a PSR must contain information on the defendant's history and circumstances, including "*any circumstances* affecting the defendant's behavior that *may* be helpful in imposing sentence . . ." Fed. R. Crim. P. 32(d)(2)(A)(iii) (emphases added), how does the probation officer know what "may" be helpful in imposing a sentence? Surely experience and discretionary judgment is at play in deciding what makes the final cut presented to the judge.

Were the rule otherwise, and the probation office served only as a kind of judicial postal service, one might also ask why Rule 32 affords so many opportunities for parties to submit statements, representations, writings or documents "to a judge." For example, before defendant is sentenced, he or she must be given the chance to review and object to the PSR. Fed. R Crim. P. 32(f).

The court, in turn, may accept only *undisputed* portions of the PSR as its findings of fact. *Id.* R. 32(i)(3)(A). The parties may also present additional evidence *to the judge* concerning any unresolved objections. *See id.* R. 32(i)(2). And the judge is required to rule on any unresolved objections prior to sentencing. *See id.* R. 32(i)(3)(B). At the sentencing hearing itself, "*the court* . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." *Id.* R. 32(i)(1)(C) (emphasis added). And, before imposing a sentence, the defendant must be afforded an opportunity to speak *to the court*. *Id.* R. 32(i)(4)(A). If the probation officer were merely a faithful delivery agent, transmitting documents from defendants to judges unadorned, rather than someone who employs independent discretion in making judgments and recommendations, none of these procedures would be necessary.

* * *

All this is by way of saying that providing information to a probation officer in the course of the probation officer's presentence investigation involves decidedly *something more* than making a "submi[ssion] . . . to a judge" – even if it might be characterized as involving that as well. Section 1001(a) criminalizes false statements made in *any* matter within the jurisdiction of *any* branch of government, including the judiciary, and Section 1001(b) excepts only statements "submitted . . . to a judge or magistrate" in the course of a judicial proceeding. Other false statements, including those made to a probation officer while acting

-9-

within the jurisdiction of the judicial branch in performing a presentence

investigation, are thus federal crimes within the plain terms of Section 1001(a).

*United States v. Manning, No. 07-5035*

**HOLLOWAY,** Circuit Judge, dissenting.

I respectfully dissent. The majority's scholarly analysis is impressive but not persuasive to me in the end. I agree instead with the analysis of the district judge in this case and the panel majority in *United States v. Horvath*, 492 F.3d 1075 (2007), *reh'g den.*, 2008 WL 943951 (9th Cir., April 9, 2008).

The government chose to prosecute Manning under 18 U.S.C. § 1001, eschewing the opportunity to proceed under a statute that would avoid the issue we now face.[1] Limited to language applicable in this case, section 1001(a)(2) prohibits any person from making a materially false statement or representation in any matter within the jurisdiction of the judicial branch. But an exception is provided in subsection (b), an exception that had been created by the courts before it was enacted by Congress, as the majority accurately notes. Subsection (b) provides that the prohibition of subsection (a) "does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding."

The question before us is narrow. We are dealing with an express exception created by Congress for false statements made to a judge by a party or counsel. Given that the requirement that the statement must have been "submitted" to a judge or magistrate is satisfied when the statement is submitted through an intermediary such as the court clerk, it seems to me that there is little room for doubt that the

---

[1]See maj. op. at 8, n.2.

exception should be applied here as well.[2]  The defendant submitted the statement

to the probation officer whom, the majority correctly notes, we have described as an

"agent" for the court. *See United States v. Rogers*, 921 F.2d 975-979-80 (10th Cir.

1990).  The inference is inescapable that defendant intended it to be relayed to the

judge, just as an attorney who hands a written motion to the court clerk intends and

expects that the paper will be relayed to the judge.  Indeed, the submission of the

statement is expressly for that purpose *as decreed by Congress.  See* 18 U.S.C. §

3664(d)(3) (quoted in maj. op. at 19).

Moreover, notwithstanding the discretion vested in the probation officer as to

what he might do with the statement *in addition to* transmitting it to the judge, it is

difficult to imagine that the probation officer would elect not to forward the

statement to the judge.  The probation officer might add his own statement.  He

might tell the judge that his research has found strong evidence to contradict the

defendant's statement.  Or, as in *Horvath*, the probation officer might add the

statement that attempts to verify the statement were inconclusive.  Or, the probation

---

[2]It is interesting to note that in *Horvath*, the defendant had made the same
false statement to the judge (twice) and to the probation officer.  492 F.3d at
1076-77.  It is indisputable that the statutory exemption applies to protect the
statements made to the judge from prosecution under *this* statute.  It seems to me
a quite modest and reasonable conclusion that making the statement to an agent of
the court who was duty-bound to relay the statement to the judge was similarly
treated by Congress, *i.e.* was removed from the proscription of section 1001 while
still subject to possible prosecution as obstruction of justice.  Also, because
section 3664(d)(3) calls for information to be provided by the defendant in an
affidavit, it would seem that in many circumstances prosecution for perjury would
be possible.

officer might supply corroborating information. But under any scenario, the defendant's statement is certain to be passed on to the judge. Accordingly, submission of the statement to the probation officer was not something different from submission of a statement to the court's clerk.

In short, following the analysis of the panel majority in *Horvath*, I would hold that the exemption of subsection 1001(b) applies because the defendant submitted the statement to the probation officer under circumstances in which that agent of the court was duty-bound to relay the statement to the judge. Thus, the statement was submitted to the judge just as surely as if it the document containing the statement had been handed to the judge's clerk or bailiff, notwithstanding the fact that the probation officer's obligation was not just to forward the statement but to do so in conjunction with his independent investigation.

I therefore respectfully dissent.